STATE

v.

Antone S. CRUZ, Jr., Antone Cruz & Associates, Herbert Leddy, Gilbane Building Company & Michael Cavaleri.

86–441–M.P.

Supreme Court of Rhode Island.

Oct. 31, 1986.

Arlene Violet, Atty. Gen., Thomas Dickinson, John J. Nugent, Jr., Sp. Asst. Attys. Gen., for plaintiffs.

Joseph A. Kelly, Carroll Kelly & Murphy, Providence, for defendant.

## OPINION

PER CURIAM.

This case comes before us on the state's appeal from certain pretrial rulings made by the trial justice. This appeal followed the granting of a motion by the defendants for speedy trial based upon their assertions that delay in the trial of their case was severely prejudicial due to the fact that, during the pendency of this indictment, the defendants were considered ineligible to be awarded government contracts. Upon the filing of the state's appeal in this court, we issued an order to both parties to appear before the court in order to show cause why the issues raised by the state's appeal should not be summarily decided. The parties appeared before us on October 22, 1986 for oral argument in accordance with the order. On October 24, 1986 we issued an order dismissing the state's appeal. This opinion sets forth the reasons underlying said order.

The facts of the case, though not entirely agreed upon by the parties, are in the main not in genuine dispute.

The defendants were indicted for allegedly entering into a contract on the basis of the false pretense that they would utilize the services of a minority subcontractor who was in fact unable to perform the work to be assigned. This indictment was returned by the grand jury on April 8, 1986. On April 23, 1986 and again on July

23, 1986, defendants moved for a speedy trial on the ground that delay in the trial of the case was of enormous financial prejudice to defendants and the corporate enterprise with which they are associated. In response to this latter motion, a justice of the Superior Court who was in charge of the criminal trial calendar issued an order on September 23, 1986, assigning the case for trial to October 20, 1986. Thereafter, the Presiding Justice designated Justice Rodgers of the Superior Court to conduct the trial of the case. The trial justice scheduled extensive pretrial hearings and conferences with the parties to this litigation in order to expedite the resolution of all preliminary motions and other matters which would require determination prior to trial.

On October 6, 1986, defendants filed a notice of intention to waive jury trial and to be tried by the trial justice without the intervention of a jury. The trial justice set this motion and the state's objection thereto down for hearing to October 17, 1986. On October 14, 1986, the state filed a motion for leave to amend its discovery and to add names and summary of anticipated testimony of witnesses. On the same date, the state filed a motion requesting that the trial justice recuse or disqualify himself from hearing the case. This motion was supported by an affidavit dated October 14, 1986 and signed by one Wayne Sacco, an investigator employed by the Attorney General, who alleged that he had learned that the trial justice has been a member of the Point Judith Country Club for a period of approximately five years and further upon information and belief that William J. Gilbane, Jr., Paul Choquette and Robert Gilbane, all of whom were principals or salaried managerial employees of the Gilbane Building Company, were members of the same club and have been members during the time of the membership of the trial justice.

On October 15, 1986, the state filed a second motion to recuse. This motion was supported by a "substitute affidavit" of Wayne M. Sacco dated October 15, 1986 in which he alleged that only William J. Gilbane, Jr., Vice President of the Gilbane Building Company and signatory to the Capitol Center Project contract, which was the subject of litigation in the pending indictment, was a member of the Point Judith Country Club and further that "two male members of the Gilbane family, who are father and son, are and have been members of the Point Judith Country Club." Mr. Sacco further alleged that Paul Choquette, a cousin of William J. Gilbane, Jr., and chief executive officer of the Gilbane Building Company had publicly criticized the Attorney General for indicting defendants.

A hearing was held by the trial justice pursuant to said motion to recuse during which the court heard the testimony of Mr. Wayne M. Sacco, who was the author of both affidavits and of Edward J. Quinlan, Manager of Public Relations for Gilbane Building Company. Mr. Quinlan had been subpoenaed by the state just prior to the afternoon session on October 17, 1986. Mr. Quinlan testified on interrogation by the prosecutor that Mr. William Gilbane, Jr., had stated that he had met the judge, but they had no social relationship. He further stated that Mr. William Gilbane, Sr., had previously been a member of the Point Judith Country Club, but that he had resigned approximately two months previous to the hearing. Mr. William Gilbane, Sr., had told Mr. Quinlan that he had never met Justice Rodgers.

Thereafter, Justice Rodgers submitted to a voir dire examination under oath. He testified that he did not know Robert Gilbane, that he knew Mr. Paul Choquette as a public figure and prior All American football player at Brown University, but that he had never had any social acquaintance with Mr. Choquette. He further stated that he had met Mr. William Gilbane, Jr., on no more than six occasions. He testified that he would not recognize Mr. Gilbane upon sight. He further testified that he might have been in a group on occasions

when Mr. Gilbane was present. Justice Rodgers further submitted to examination by the prosecutor and disclosed that he had no relationship with any member of the Gilbane family which would affect his impartiality in presiding over the instant case. He further disclosed, for the benefit of defendants, that he might have a distant blood relationship to the prosecutor, J. Joseph Nugent Jr., that he had been raised in the same neighborhood as Attorney General, Arlene Violet, that she had been in his home prior to the justice's marriage and that he had on occasion been in the company of her brother and sister, but that these contacts would not in any way affect his impartiality.

In respect to this appeal the state raises four issues which will be dealt with separately. Additional facts will be provided as required in the resolution of each issue.

## I
### The Recusal Issue.

■ The state argues that the trial justice should have disqualified himself from sitting on the instant case in order to avoid the appearance of impropriety, since he is a member of the same country club as is William Gilbane, Jr., a managerial employee of the defendant Gilbane Building Company. The state's witness, Mr. Wayne M. Sacco, testified on information and belief that the membership of the Point Judith Country Club approximated 365 persons in number. He presented no evidence, beyond this fact of membership, that Justice Rodgers had a social or business relationship with any of defendants or their employees. Moreover, the state had subpoenaed the Manager of Public Relations of the Gilbane Building Company who testified to the absence of any significant relationship between the trial justice and William Gilbane, Jr., or William Gilbane, Sr. It is true that the attorney for the prosecution at that belated time desired to subpoena a host of other witnesses, apparently for the purpose of contradicting the testimony of his own prior witnesses to say nothing

of the testimony of the trial justice himself. It must also be borne in mind that this hearing took place on October 17th (a Friday) and the trial was scheduled to begin on October 20th (a Monday). This trial date had been set on September 23, approximately one month earlier.

All parties to this case agree that Canon 4 of the Canons of Judicial Ethics adopted by this court provides in pertinent part:

"A judge's official conduct should be free from impropriety and the appearance of impropriety."

All parties agree that a judge should recuse himself in the event that he is unable to render a fair and impartial decision in any case. This court has set forth a standard for responding to motions for recusal in *State v. Clark*, 423 A.2d 1151, 1158 (R.I.1980):

"[A] judge has as great an obligation not to disqualify himself when there is no occasion to do so as he has to do so when the occasion does arise. * * * Before a judge is required to recuse in order to avoid the appearance of impropriety, facts must be elicited indicating that it is reasonable for members of the public or a litigant or counsel to question the trial justice's impartiality. However, recusal is not in order by a mere accusation that is totally unsupported by substantial fact. * * * Here, at most, the record indicates that the trial justice and the prosecutor were acquaintances. Mere acquaintanceship between members of the bench and bar, particularly in a state the size of Rhode Island, is not a ground for recusal. If it were, the state's judicial system might well grind to a halt."

We reaffirmed the foregoing principles in *State v. Romano*, 456 A.2d 746, 752–53 (R.I.1983). Again, the question had been raised by a criminal defendant concerning the judge's acquaintance and relationship to the Attorney General and his family. We further quoted a decision of the Court of Appeals of the First Circuit wherein the impartiality of a Federal District Judge had

been challenged by the prosecutor because of a relationship with a former governor who in turn had an alleged acquaintance with the defendant. The court of appeals in *In re United States*, 666 F.2d 690, 697 (1st Cir.1981), observed that if a motion for recusal should be granted in that type of case, "judges could hope to preside without challenge solely in communities in which they are strangers." The court went on to say that when a judge presides in an area where he and his family have lived "for one or more generations" he is likely to have a broad acquaintance with a large number of people, some of whom have been helpful and some of whom have been critical. "Not only would the role of judges be severely constricted by requiring disqualification under these circumstances, but the result would reflect a more jaundiced view as to when there should be a reasonable doubt about a judge's impartiality than accords with the public perception." *Id.* at 697.

In applying these principles to the state's motion to disqualify the trial justice, we are of the opinion that the state's basis for such motion could only be described as "flimsy". It borders upon the frivolous to suggest that membership in an organization consisting of approximately 365 persons in common with an individual whom the trial justice would not recognize with-

out assistance would create any actual or apparent impartiality on the part of a trained and experienced trial judge.

We are of the opinion that the evidence presented by the state would have been woefully insufficient even to sustain a challenge for cause in respect to a potential juror. In making this statement we do not wish to imply that a challenge which would be sufficient to excuse a juror for cause would be sufficient to disqualify a judge. The underlying concept of our judicial system is based upon the assumption that judges, by education, training, and experience, are able to surmount the possession of information and other mental and emotional constraints which may well preclude a juror from rendering a fair and impartial verdict based solely on the evidence produced in court. *See, e.g., Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

In the case at bar, the state made no colorable claim to the existence of any facts which would cause a justice of the Superior Court to be unable to render a fair and impartial decision based solely on the evidence presented before him in the course of trial.[1]

The state further argues that additional time should have been given to the prosecution to obtain additional testimony from members of the Gilbane family and

---

1. The state in its argument suggests that a judge who becomes a witness in a case should not further participate in the trial and cites for this proposition. Annot., 22 A.L.R.3rd 1198 (1968). All of the cases collected in the foregoing note involve situations in which a judge became a witness relating to some issue raised at the trial. These cases are not relevant to the judge's submitting to a voir dire interrogation under oath and setting forth his acquaintance or lack thereof with the parties in response to a motion to disqualify. The state has also asked us to set guidelines concerning procedures to be adopted in response to a motion to disqualify a judge. We are of the opinion that our prior cases and Canon 4 of the Canons of Judicial Ethics set forth the substantive standard to be applied. No guidelines or canons could set forth standards which would deal with every conceivable motion which might be filed by a party.

In the Federal system guidance is supplied by 28 U.S.C. §§ 144, 455 (West 1968 & Supp. 1985) (the latter in considerable detail). Case law construing these statutory provisions indicate that affidavits of prejudice must be timely filed, not on the eve of trial, *United States v. Faul,* 748 F.2d 1204 (8th Cir.1984), *cert. denied,* 409 U.S. 915, 105 S.Ct. 3500, 3501, 87 L.Ed.2d 632 (1985), and must set forth facts which would cause a reasonable person to believe that the judge could not preside impartially at the trial. *See, e.g., Hepperle v. Johnson,* 590 F.2d 609 (5th Cir. 1979); *United States v. Ming,* 466 F.2d 1000 (7th Cir.), *cert. denied,* 409 U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 176 (1972); *Hodgson v. Liquor Salesmen's Union Local No. 2,* 444 F.2d 1344 (2nd Cir.1971). Under this criteria the trial justice would have been justified in denying the motion to recuse simply by examining the face of the affidavit without the requirement of any additional testimony.

other proposed witnesses. This claim is without merit. The prosecutor was well aware that the date for trial had been set to October 20, 1986. Consequently, when the disqualification issue was set down for hearing to October 17, it was the duty of the state, having filed its affidavits and motions on October 14 and 15 to have available any and all witnesses whom it chose to present. It was not the function of the prosecution in light of the time constraints well known to it, to try this issue piecemeal as it apparently sought to do on October 17, 1986.

We are of the opinion that the trial justice did not err when he declined to disqualify himself and moreover did not err when he declined to allow a continuance to permit the state to introduce further witnesses whose testimony was likely to be merely cumulative to that which the trial justice had already heard.

## II

### The Discovery Issue.

■ The state argues that the trial justice should have granted it a continuance by reason of the failure of the defendant to make adequate discovery relating to "notice of alibi". It is true that Rule 16(c) of the Superior Court Rules of Criminal Procedure provides as follows:

"Notice of Alibi. In the event a defendant seeks any discovery under subdivision (a) of this rule, then upon demand by the attorney for the State and delivery by him to the defendant of a written statement *describing with specificity the date and time when and the place where the offense charged is alleged to have occurred,* the defendant, within twenty-one (21) days after receipt of such demand and particulars, shall give written notification whether he intends to rely in any way on the defense of alibi. If the defendant does so intend, the notice shall state with specificity the place at which he claims to have been at the time of the alleged offense and the names and addresses of the witnesses he

intends to call at the trial to establish such alibi. Within twenty-one (21) days after receipt of written notification of intent to rely on the defense of alibi, together with particulars thereof, the attorney for the State shall furnish to the defendant written notice of the names and addresses of the witnesses whom the State intends to call at the trial to establish defendant's presence at the place where and the time when the offense is alleged to have occurred." (Emphasis added)

In applying this rule to the circumstances of this case it is well to bear in mind, as noted by the trial justice, that the indictment charged that defendants on a day between the 3rd day of October, 1983 and the 7th day of April, 1986, these defendants did obtain and steal money and goods under false pretenses. The indictment further charged defendants with the crime of conspiracy and alleged that between the 1st day of July 1983, and the 7th day of April 1986, defendants entered into a conspiracy to do unlawful acts. Consequently, the state at no time described "with specificity the date and time when and the place where the offense charged is alleged to have occurred * * *".

It was further represented at the hearing before the trial justice on October 17, 1986 that the discovery furnished by defendant in July indicated that Mr. Cavaleri had not been assigned to the Capitol Center Project during the times set forth in the indictment. In any event, at the hearing before the trial justice on October 20, 1986, counsel for the prosecution made a further request that the court order defendant Cavaleri, to give a complete account of his whereabouts, not during the entire period set forth in the indictment, but during the period from June 1, 1983 "to the end of August or September, 1983." Although counsel for defendant maintained that such information had been previously offered, he made no objection to giving a detailed account of Mr. Cavaleri's whereabouts dur-

ing the requested period in writing and that he would do so on October 20, 1986.

There is no evidence on the record that the state had ever complied with the requirement necessary to trigger the operation of Rule 16(c). Moreover, the state had been in possession of discovery materials since July of 1986 and had not requested any further discovery until the eve of trial. Even if Rule 16(c) had been applicable to this case (a very doubtful proposition, indeed), the state did not perform the necessary conditions precedent to the imposition of sanctions pursuant to Rule 16(i).

Consequently, the trial justice did not abuse his discretion in denying the state's motion for a continuance after he had granted the state's motion to compel.

### III

### The Waiver of Jury Trial.

■ The state argues that the trial justice erred as a matter of law in allowing the waiver by defendants of their right to jury trial without exercising his discretion in determining the advantages and disadvantages of trying this case without a jury. The state cites a number of federal cases including *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), which holds that a defendant does not have a federal constitutional right to waive a trial by jury and *United States v. Panteleakis*, 422 F.Supp. 247 (D.R.I.1976), which construed Singer as allowing a judge to permit waiver of a jury trial even over the objection of the government when it determined that the refusal to consent under the circumstances was unreasonable or arbitrary.

As interesting as these cases may be in the abstract, they deal with a procedural rule which is fundamentally different from the Rhode Island Rule. Rule 23(a) of the Superior Court Rules of Criminal Procedure provides as follows:

"Trial by jury. Cases required to be tried by jury shall be so tried unless the defendant in open court waives a jury trial in writing with the approval of the court."

The reporter's notes following this rule set forth that it conforms to existing Rhode Island practice as prescribed in G.L.1956 (1981 Reenactment), § 12–17–3.[2] The notes go on to say that "it differs from the federal rule by expressly requiring that waiver of jury be 'in open court' and by not requiring consent of the prosecution". The sole purpose in requiring the approval of the court and mandating that the waiver be made in open court is to assure that the defendant who waives a jury trial does so intelligently and with full knowledge of the consequences of his waiver. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The specific deletion of the requirement of consent by the prosecution was to preclude the necessity of an adversarial proceeding on this issue.

The framers of this Rule as well as the Legislature enacting § 12–17–3 were not fearful of the ability of justices of the Superior Court to render reliable determinations on the facts. The constitutional right to a trial by jury is given for the protection of the defendant, not for the protection of the prosecutor. Indeed, in a complex case involving contracts and corporate records, findings of fact by a jury made up of lay persons will probably not be as reliable and certainly not as articulate as those made by a judge who is trained and experienced in the determination of complicated factual issues.

---

**2.** General Laws 1956 (1981 Reenactment) § 12–17–3 provides as follows:

"Waiver of jury trial—Special findings and rulings.—In all criminal cases the accused may, if he shall so elect and with the leave of the court, waive a trial by jury, and in such cases the court shall have jurisdiction to hear and try the cause without a jury and render judgment and pass sentence thereon. In cases so tried the court shall, upon request of the accused, make special finding upon any issue of fact and special ruling upon any question of law arising in the same."

The state quotes a sentence from *Press Enterprise Co. v. Superior Court,* —— U.S. ——, ——, 106 S.Ct. 2735, 2742, 92 L.Ed.2d 1 (BNA) (1986), in which the Supreme Court describes the jury system as "an inestimable safeguard against the corrupt or over zealous prosecutor and against the compliant, biased or eccentric judge * * *." *Press Enterprise Co.* had nothing to do with trial by jury and was concerned with the right of the press to be present or have a prompt disclosure of proceedings in a preliminary hearing as such hearings are conducted in the state of California. The quoted sentence came from *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), in which Justice White was commenting upon the right of a defendant to trial by jury. It did not purport to deal constitutionally or otherwise with the right of the government to a jury trial. Moreover, Justice White's lyrical description of the virtues of trial by jury was largely based upon the refusal of juries in the 17th and 18th centuries to apply the often ferocious law of England upon such sterling individuals as William Penn. *See Bushell's Case* 124 Eng.Rep. 1006 (1670). At no time did he suggest that juries were superior factfinders or that they had greater skill in applying the law to the facts of the case in such fashion as to vindicate the public interest more effectively than would a professional judge.

In any event, both the Legislature and the framers of Rule 23(a) decided to depart from the federal model by not requiring the consent of the state to a waiver of jury trial. Consequently, the judge's sole task in deciding a waiver of jury trial is to determine that the defendants knowingly and intelligently waive their Sixth Amendment right to trial by jury as well as the parallel right guaranteed by Art. I sec. 10, of the Rhode Island Constitution. The trial justice carried out his responsibilities in this respect by requiring that waivers be made by each and every defendant in open court after he had admonished defendants of the nature and consequence of such waiver.

In following this procedure, the trial justice was correct in his application of the mandate of Rule 23(a) and of § 12–17–3.

## IV

### The Motion In Limine.

■ The state argues that the trial justice erred in failing to grant its second motion in limine relating to the admissibility of certain evidence of an alleged prior act of one or more members of the Gilbane family. This motion was made pursuant to principles enunciated in *State v. Bennett,* 122 R.I. 276, 405 A.2d 1181, 1187 (R.I.1979), in which we recognized the procedural tool of a motion in limine in order that the trial justice might give guidance both to the defense and prosecution concerning rulings which would be made during the course of the trial. After considering precedents in other states and in the federal system, we concluded that a trial justice should respond to such a motion "so long as he had before him all of the relevant information upon which a decision might be based". *Id.*

Applying the principles set forth in *Bennett,* the trial justice in the instant case granted one of the state's motions in limine relating to a prior act of the defendant which he felt was admissible under the doctrine of *State v. Colangelo,* 55 R.I. 170, 179 A. 147 (1935), and its progeny. This case stands for the proposition that while evidence of prior acts of a defendant in a criminal case are not admissible in order to show his propensity to commit the type of crime with which he is charged, an exception may be made when a prior act or crime committed by defendant tends to show defendant's motive, intent, scheme, or design or absence of mistake. *See also McCormick's Handbook of the Law of Evidence,* § 190 at 557–566 (3d ed. Cleary 1984), which further defines both the rule that forbids the prosecution from introducing evidence of bad character in order to prove that the accused is more likely to have committed the crime in issue and the excep-

tions to the rule which have been widely recognized.

In the case at bar, the state's second motion in limine sought prior approval of an introduction into evidence of facts tending to show that one or more contractors from the Capitol Center Project had been improperly sent to do work at a Gilbane family home, and that this work was improperly charged to the Capitol Center Project. The trial justice held that this evidence did not appear to be relevant in any way to establishing motive, intent, scheme or design in connection with the indictment at issue wherein the defendants were charged with entering into a contract with the state on the basis of false pretenses. He commented that the proposed evidence relating to work on private property did not meet the standard set out in *Colangelo*, but went on to observe that during the course of trial such evidence might become relevant. Undoubtedly, the trial justice was referring to the general proposition that in the event that a defendant places his character in issue by giving evidence of good character, the prosecution may introduce evidence of the bad character of the accused. *McCormick's Handbook of the Law of Evidence* § 190; 1A Wigmore, *Evidence* § 57 (Tillers rev. ed. 1983).

Counsel for the state seemed to argue that even though the case had not yet begun, the defendant Gilbane Company had made it clear that "they are a respectable company that does business in a respectable way". Apparently these claims had been made in the press and in preliminary proceedings before the court. The Attorney General must recognize the distinction between claims made in the press or in preliminary proceedings and evidence introduced at trial. It is obvious that such claims made outside the ambit of the trial can furnish no foundation for an exception

to the general rule that evidence of prior bad conduct is inadmissible. It is further obvious that under the principles of *Bennett*, the trial justice had no choice save to rule as he did on the motion in limine, since he did not have before him all of the relevant information upon which a decision might be based. His decision to defer ruling pending the unfolding of evidence at the trial was without error.

■ For the reasons stated, the state's appeal from the challenged rulings of the trial justice was denied and dismissed in our order dated October 24, 1986 and the papers in the case were remanded for trial in accordance with the prior schedule established by the trial justice.[3]

ORDER

This case came before this court for oral argument on October 22, 1986 pursuant to an order which had directed the state and the defendants to appear before the court in order to show cause why the issues raised by the state's appeal should not be summarily decided.

After hearing the arguments of counsel, examining the memoranda filed by the parties and studying the transcript which had been ordered by the prosecution, we have reached the following conclusions:

1. The trial justice did not err in declining to disqualify himself from presiding over the trial of this case.

2. The trial justice did not err in granting leave to the defendants to waive trial by jury.

3. The trial justice was correct in declining to rule on that portion of the state's motion in limine regarding the admission of an alleged prior act of the defendant in the absence of an adequate factual predicate.

---

**3.** We are mindful of the fact that the Attorney General has dismissed this case presumably by virtue of her authority granted by Rule 48(a) of the Superior Court Rules of Criminal Procedure. However, the issues involved are of sub-stantial public interest and deal with questions that are capable of repetition but yet may evade review. Consequently, we do not consider the issues dealt with in this opinion to be moot.

4. The trial justice did not abuse his discretion in denying the state's motion for a continuance as a result of certain scheduling information provided by the defendants in regard to the whereabouts of defendant, Michael Cavalieri, in light of the trial justice's granting of the state's motion to compel.

Consequently, the state's appeal is denied and dismissed, the papers in the case may be remanded to the Superior Court for trial as previously scheduled by order of the trial justice.

An opinion will follow setting forth in detail the reasons for this court's dismissal of the state's appeal.