Jason Michael MOORE, Joe Moore, and Dianne Moore, Respondents,

v.

Hollie Marie MOORE, Appellant.

No. 25519.

Missouri Court of Appeals, Southern District, Division One.

May 20, 2004.

Robert D. McGee, Springfield, for appellant.

Kay A. Van Pelt, Springfield, for respondents.

ROBERT S. BARNEY, Presiding Judge.

Appellant Hollie Marie Moore ("Mother") appeals from a judgment entered by the Honorable Don Burrell, Jr., ("Family Court Judge") after a trial in front of Family Court Commissioner, the Honorable Winston Davis ("Commissioner Davis"), which granted a modification of a dissolution of marriage decree. The original dissolution of marriage decree had granted Mother sole physical custody of

Destiny Rain Moore ("Destiny"), the only child born of the marriage between herself and named Respondent, Jason Michael Moore ("Father").[1]

In pertinent part, in his findings of facts and recommendations on judgment of modification, Commissioner Davis concluded the welfare of the child required a transfer of custody from Appellant to Respondents Joe Moore and Dianne Moore ("Intervenors"), which the Family Court Judge ordered in his judgment of modification.

The record shows that on July 17, 2001, Father filed a motion to modify the prior decree of dissolution of marriage. In response, Mother filed an answer and a counter-motion to modify, in which she sought an order that Father "pay a lump sum in the amount of $11,167.00 to [Mother] as and for arrearage of child support" and the court's permission to move to the State of Washington with Destiny.

Subsequent to filing his motion to modify, Father was incarcerated, and Intervenors filed a motion of paternal grandparents to intervene, which was sustained on September 14, 2001.

On May 28, 2002, Intervenors filed Intervenors' emergency motion and affidavit for third party temporary custody. In this motion, Intervenors alleged that Destiny was sexually abused while in Mother's care and that Mother knew or should have known about the abuse.

On August 8, 2002, Commissioner Davis presided at a hearing on Intervenors' emergency motion. At that hearing, Intervenors introduced the deposition of Leslie Brown, a counselor, into evidence and presented the testimony of Intervenor Joe Moore and Dr. Mark Bradford, a clinical psychologist. The Guardian Ad Litem

---

1. Father has filed no brief in this appeal.

presented the testimony of Amy Chenoweth, a psychotherapist. After this testimony, Commissioner Davis discussed with all attorneys whether to proceed with additional witnesses at that time. He announced that he would subsequently contact the parties the following week with his decision, stating that he did not "know what that contact will be, whether or not it'll be for additional time; if so, how much time, when that'll be, so on and so forth." [2]

The record shows that on September 9, 2002, Commissioner Davis received a report from Domestic Relations Officer Julie Chapman ("DRO Chapman"), an assistant to the Juvenile Officer of Greene County.[3] The following day, Commissioner Davis entered his finding and recommendation on temporary custody. It is clear that DRO Chapman's report figured prominently in Commissioner Davis' decision to transfer temporary custody to Intervenors.[4]

On September 16, 2002, Mother filed a motion for rehearing and was informed that such a motion was not the appropriate means of accomplishing what Mother set out to do. On September 26, 2002, Mother filed a motion to set aside judgment, which Commissioner Davis denied on October 1, 2002.

On October 17, 2002, Mother filed a motion to recuse. In her motion to recuse Mother charged, *inter alia*, that Commissioner Davis: "entered his finding in essence unilaterally without the benefit of any opposing evidence which was scheduled to be presented by [Mother] on October 16, 2002," and that she "anticipated offering evidence of Division of Family Services Investigation of a hotline regarding the alleged sexual abuse of [Destiny] by Grant Covey that was unsubstantiated." Additionally, Mother alleged that she "anticipated calling to the stand five additional witnesses including an expert witness which would have refuted Intervener's [sic] claims and allegations."

Mother also charged that "the facts relied upon by Commissioner Davis[ ] as stated in his Finding of Fact and Conclusions of Law were not substantiated by the facts presented at hearing or any findings set forth in the ex parte communication from the Domestic Relations Unit to Commissioner Davis." Commissioner Davis overruled the motion without explanation.

As previously set out, on February 14, 2003, Commissioner Davis entered his findings and recommendations on judgment of modification, which were adopted by the Family Court Judge. In the judgment, Commissioner Davis addressed the

---

**2.** The record does not disclose if any contact was made following this hearing. Mother alleges the next contact she had from the Commissioner Davis was receipt of the order of temporary custody.

**3.** The record reveals that the "Domestic Relations Investigation Report" set out, *inter alia*, information received from the Guardian Ad Litem; detailed information received from a "database check" maintained by the Division of Family Services, detailing seven hotline references and ten family assessments dating back to November 1997; database information provided by the Greene County Juvenile Office; a Criminal Record Check; information from the Springfield Public Schools, and

remarks made by various, interested persons, together with various attachments and investigative remarks made by DRO Chapman.

**4.** The findings and recommendation provided, in part, that:

From the evidence heard the Court can find that identified physical and emotional risks were possible to the child and therefore the Court ordered the investigation to be conducted by Officer Chapman. The Court received on September 9, 2002[,] officer Chapman's report and the Court finds relevant and credible the attached paragraph that is contained in the report.

best interests of the child in relation to the factors provided in section 452.375.2.[5] In so doing, the judgment set out that the best interests of the child required a modification of custody and granted Intervenor's motion to modify. Commissioner Davis also denied Father's motion for modification and Mother's counter-motion to modify.

Mother appeals the judgment raising two points of error. Because we find Point One dispositive, we do not reach the other point presented. In Mother's first point she argues Commissioner Davis abused his discretion and erred in failing to sustain her motion to recuse and to remove himself from future proceedings in the cause following the entry of his temporary custody order. As grounds for recusal she sets out that Commissioner Davis' order of temporary custody was entered before Mother had the opportunity to be heard and that the order was based in large part on DRO Chapman's ex parte communication not properly before Commissioner Davis.

"Rule 51.05 provides the procedure by which a party can procure a change of judge. The rule applies to commissioners of the family court." *Popa v. Popa*, 990 S.W.2d 118, 119 (Mo.App.1999). "It is presumed that a judge acts with honesty and integrity and will not undertake to preside in a trial in which the judge cannot be impartial." *Smulls v. State*, 10 S.W.3d 497, 499 (Mo. banc 2000). We will affirm a denial of a motion for recusal unless the court abused its discretion. *See Robin Farms, Inc. v. Bartholome*, 989 S.W.2d 238, 245 (Mo.App.1999). "An abuse of discretion occurs when the court's order is 'clearly against the logic of circumstances

then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *Id.* (quoting *Markovitz v. Markovitz*, 945 S.W.2d 598, 599 (Mo.App. 1997)).

Although it authorizes a change of judge for cause, "Rule 51.05(d) does not provide guidance as to what qualifies as 'cause,' requiring a judge to recuse[.]" *Id.*

Rule 2.03, Canon 3 provides, in pertinent part, as follows:

E. Recusal.

(1) A judge shall recuse in a proceeding in which the judge's impartiality might reasonably be questioned, *including but not limited to* instances where:

(a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it;

(c) the judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest, that could be substantially affected by the proceeding;

(d) the judge or the judge's spouse, or a person within the third degree of rela-

---

**5.** The judgment does not show the court found a change had occurred in the circumstances of the child or her custodian, as set out in section 452.410.1. *See Searcy v. See-*

*dorff,* 8 S.W.3d 113, 117 (Mo. banc 1999). Because of our disposition of Mother's first point on appeal, we need not address this issue.

tionship to either of them, or the spouse of such person:

(i) is a party to the proceeding, or an officer, director or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding;

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

Rule 2.03, Canon 3 (commentaries omitted) (emphasis added).[6]

■ "However, the phrase 'including but not limited to' signifies that a judge's duty to disqualify is not limited to the instances specified in the rule." *Robin Farms,* 989 S.W.2d at 246. " 'No guidelines or canons could set forth standards which would deal with every conceivable motion which might be filed by a party.' " *Id.* (quoting *State v. Cruz,* 517 A.2d 237, 241 n. 1 (R.I.1986)). The determination as to what factual situations fall under the "including but not limited to" language of the rule must be made on a case-by-case basis. *Id.*

■ " 'The mere fact that rulings are made against a party does not show bias or prejudice on the part of the judge.' " *Id.* at 247 (quoting *Bruflat v. Mister Guy, Inc.,* 933 S.W.2d 829, 836 (Mo.App.1996)). "This is so because any alleged bias or prejudice on the part of the judge, to be disqualifying, must stem from an extrajudicial source." *Id.*

We also note that Rule 2.03, Canon 3B(7) provides, in pertinent part:

A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:

* * *

(b) A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice and affords the parties reasonable opportunity to respond.

The "Commentary" to Canon 3B(7) also sets out, in pertinent part, that "[a] judge must not independently investigate facts in a case and must consider only the evidence presented."

In his findings and recommendation on temporary custody, Commissioner Davis stated that "all of the evidence was not presented" during the initial hearing on the matter, but that "[f]rom the evidence heard the Court can find that identified physical and emotional risks were possible to the child and therefore the Court ordered the investigation to be conducted by Officer Chapman."

In their brief, Intervenors do not dispute Mother's contention that Commissioner Davis received the investigative report from DRO Chapman and that no party had access to, knew the contents of, or had a reasonable opportunity to respond to the report prior to the entry of Commissioner Davis' findings and recommendations on temporary custody. As such, DRO Chapman's report was clearly an ex parte communication made to Commissioner Davis, outside the presence of the parties, that obviously influenced Commissioner Davis's findings and recom-

---

**6.** All rule references are to Missouri Court Rules (2002), unless otherwise specified.

mendations on temporary custody. *See* Rule 2.03, Canon 3B(7)(b).

■ Furthermore, as previously related, the presumption is that a judge "would not undertake to preside over a case where his or her impartiality might reasonably be questioned." *Robin Farms,* 989 S.W.2d at 246. This presumption is rebutted "where there is actual bias and prejudice, or an appearance of impropriety." *Id.*

■ Rule 2.03, Canon 2A provides that "[a] judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Because litigants who present their disputes to a Missouri court are entitled to a trial which is not only fair and impartial, but which also *appears* fair and impartial, the test for recusal is not whether the court is actually biased or prejudiced. Rather, the test for recusal when the judge's impartiality is challenged is " 'whether a reasonable person would have a factual basis to find an appearance of impropriety and thereby doubt the impartiality of the court.' " *Williams v. Reed,* 6 S.W.3d 916, 921–22 (Mo.App.1999) (internal citations omitted) (quoting *State v. Jones,* 979 S.W.2d 171, 178 (Mo. banc 1998)).[7] "[T]o recuse where there is an appearance of impropriety, is a duty owed to the public in order to promote confidence in the impartiality of the judiciary." *Robin Farms,* 989 S.W.2d at 247.

Under the circumstances presented here, Commissioner Davis' conduct during the proceedings relating to Intervenor's motion for temporary custody created the appearance of impropriety which would cause a reasonable person to doubt Commissioner Davis' ability to preside over the motion to modify as an impartial arbiter. *Williams,* 6 S.W.3d at 924. Commissioner Davis abused his discretion in failing to sustain Mother's motion to recuse and remove himself from presiding over future proceedings in the case. Point One is well taken.

Because " 'orders concerning custody or visitation should not be made based on stale evidence from long-concluded hearings,' " on remand the trial court should extend to the parties the opportunity to present additional evidence addressing any change in the circumstances of the child or her custodial parent, Mother. *Holifield v. Holifield,* 109 S.W.3d 711, 717 (Mo.App. 2003) (quoting *Searcy v. Searcy,* 38 S.W.3d 462, 471 (Mo.App.2001)). The minor, Destiny, shall remain in the temporary custody of Intervenors pending further proceedings. The judgment of the Family Court Judge is reversed, and the cause is remanded for further proceedings consistent with this opinion.

PREWITT, J. and GARRISON, J., Concur.

---

7. In this context a " 'reasonable person ... is not one who is ignorant of what has gone on in the courtroom before the judge. Rather, the reasonable person knows all that has been said and done in the presence of the judge.' " *Smulls,* 10 S.W.3d at 499 (alteration in original) (quoting *Haynes v. State,* 937 S.W.2d 199, 203 (Mo. banc 1996)).