**ROBIN FARMS, INC., et al., Appellants,**

v.

**David and Mary BARTHOLOME, et al., Respondents.**

**Nos. WD 55605, WD 55709.**

Missouri Court of Appeals,
Western District.

April 6, 1999.

Robert W. Wheeler, Keytesville, for appellants.

Don Chapman, Jr., Brookfield, for respondents.

Before: SPINDEN, P.J., and EDWIN H. SMITH and RIEDERER, JJ.

EDWIN H. SMITH, Judge.

Robin Farms, Inc. (Robin Farms); Harlow Fay, Inc. (Harlow Fay); John and Karen Fay; and Steven and Linda Fay appeal from the circuit court's judgment, *inter alia*, denying John Fay and Robin Farms's Rule 51.05(d)[1] motion for a change of judge for cause; entering sanctions against John and Karen Fay, Robin Farms, Harlow Fay, and their attorney in the amount of $5,750 for violation of Rule 55.03(b); denying John Fay and Robin Farms's motion for a continuance, filed pursuant to Rule 65 and the Soldiers' and Sailors' Civil Relief Act of 1940 (the SSCRA), 50 U.S.C. § 521 (1990);[2] and sustaining the motion for summary judgment of the respondents, Cy and Doris Riddell, and David and Mary Bartholome, on their counterclaim against them for ejectment. The respondents cross-appeal from the circuit court's judgment sanctioning John and Karen Fay, Robin Farms, Harlow Fay, and their attorney. The dispute between the parties arose over the right to possession of a 167–acre farm owned by the respondents and located in Linn County, which was initially leased by the respondents to Harlow Fay, which lease it subsequently attempted to assign, without the express written consent of the respondents, to Robin Farms.

The appellants raise four points on appeal. In Point I, they claim that the trial court abused its discretion in denying John Fay and Robin Farms's motion for change of judge because a reasonable person would question the impartiality of the Honorable Gary E. Ravens presiding over their case. In Point II, the appellants claim that the trial court lacked jurisdiction to enter sanctions against John and Karen Fay, Robin Farms, Harlow Fay, and their attorney because, in filing their motion for sanctions, the respondents violated Rule 55.03(c). In Point III, they claim that the trial court abused its discretion in overruling John Fay and Robin Farms's December 18, 1997, motion for continuance because, under the SSCRA, the trial court was required to grant the continuance. In their Point IV, the appellants claim that the trial court erred in sustaining the respondents' motion for summary judgment on their counterclaim for ejectment because

---

1. All rule references are to the Missouri Rules of Civil Procedure, unless otherwise indicated.

2. All statutory references are to RSMo 1994, unless otherwise indicated.

there was a genuine dispute of material fact as to whether the respondents had a legal right to immediate possession of the farm. The respondents raise one point in their cross-appeal. They claim that the court abused its discretion in sanctioning John and Karen Fay, Robin Farms, Harlow Fay, and their attorney in the amount of $5,750 because this amount was unreasonable.

We affirm in part and reverse and remand in part.

### Facts

Cy and Doris Riddell and Margaret and Leslie Sensintaffar owned a farm located in Linn County, Missouri, which consisted of approximately 167 acres. On or about February 27, 1985, the Riddells and the Sensintaffars leased the farm to Harlow Fay for a term commencing March 1, 1985, and expiring December 31, 1985, and for successive annual terms thereafter, unless either party, prior to the expiration of the original term or any subsequent terms, served written notice of an intent to terminate the lease at least sixty days prior to the expiration of the current term. The lease further provided that Harlow Fay, whose corporate president was appellant John Fay, could not sublet or assign the lease without the lessors' express written consent and that if it did, the lessors had the right to re-enter and take immediate possession of the farm. Sometime thereafter, the Sensintaffars' interest in the farm passed to the respondents, David and Mary Bartholome.

Sometime in 1986, Harlow Fay assigned its lease to Robin Farms, whose corporate president was also John Fay, without asking for or receiving the respondents' express written consent. Sometime thereafter, Robin Farms sublet the house located on the farm to appellants Steven and Linda Fay.

In December 1995, John Fay, presumably acting on behalf of Robin Farms, made an oral offer to the respondents to buy the farm, including the house, for $700 per acre, or to buy only the house with some acreage, in exchange for bulldozer and terracing work he agreed to perform on the farm. In February 1996, the respondents made an oral counteroffer to sell the farm and house for $750 per acre. Robin Farms alleges that in January or February 1996, it entered into an oral contract with the respondents for the sale of the farm to it in exchange for $120,000 and the bulldozer and terracing work on the farm, valued at $25,000.

On or about February 17, 1996, Robin Farms sent the respondents a written contract for the sale of the farm, which was never executed. Sometime thereafter, the respondents contacted real estate agent Bob Peterson for assistance in selling the farm. On February 23, 1996, they entered into a real estate contract to sell the farm to Beeler Farms, Inc. (Beeler Farms), whose corporate president was Keith Beeler. As a result, on June 26 and again on July 10, 1996, the respondents sent written notice of their intent to terminate the farm lease as of December 31, 1996, to Harlow Fay, John Fay, Steven Fay, and Ellis Burns, the trustee of the Stockwell Land Trusts.

### Procedural History

On October 15, 1996, Harlow Fay, and John and Karen Fay filed a four-count petition in the Circuit Court of Linn County naming the respondents, Bob Peterson, and Keith Beeler as defendants and seeking: (1) the specific performance of the alleged oral contract for the sale of the farm to Harlow Fay; (2) as an alternative to Count I, damages for *quantum meruit* for the bulldozer and terracing work; (3) damages for the respondents' alleged tortious interference with Harlow Fay's farming business; and (4) damages for the respondents' alleged tortious interference with John and Karen Fay's farming operation.

On November 19, 1996, the respondents, Peterson, and Beeler filed a motion for sanctions pursuant to Rule 55.03(b), alleging that the appellants' petition had no factual or legal validity. On December 2, 1996, the appellants filed their first amended petition adding Robin Farms as a plaintiff and amending it to allege that Harlow Fay had assigned its farm lease to it. On December 5, 1996, the respondents, Peterson, and Beeler filed their second motion for sanctions alleging that the appellants' first amended

petition had no factual or legal validity. Also on that date, they filed a motion to dismiss the appellants' first amended petition. On December 20, 1996, the respondents filed their counterclaim for ejectment against Harlow Fay, Robin Farms, and John and Karen Fay, alleging that: (1) they were the owners of the farm; (2) Robin Farms was in actual possession of the farm; and, (3) Harlow Fay had assigned its lease to Robin Farms without their express written consent, in violation of the lease, causing the lease to be in default and resulting in neither having a legal right to possession of the farm.

On January 3, 1997, the court sustained the respondents, Peterson, and Beeler's motion to dismiss the appellants' first amended petition, but giving the appellants thirty days to file their second amended petition. On January 21, 1997, the court allowed the respondents to amend their counterclaim by interlineation, apparently to add Steven and Linda Fay as parties. On February 3, 1997, the appellants filed their second amended petition, *inter alia*, amending Count IV to allege a claim by Steven and Linda Fay against the respondents for wrongful eviction. On February 14, 1997, the respondents, Peterson, and Beeler filed a third motion for sanctions, alleging that the appellants' second amended petition had no factual or legal validity. Also on that date, the respondents filed a motion for summary judgment on all four counts of the appellants' petition and on their counterclaim for ejectment. On April 22, 1997, the trial court sustained the respondents' motion as to the appellants' Counts III and IV, finding that they had failed to state therein a cause of action upon which relief could be granted, and on their counterclaim for ejectment as to Robin Farms, Harlow Fay, and John and Karen Fay. Accordingly, on April 28, 1997, the trial court issued a writ for possession of the farm by the respondents, but not the house, in which Steven and Linda Fay continued to reside. The two remaining counts of the appellants' petition were set for trial on August 1, 1997.

On July 28, 1997, the appellants filed a motion for continuance. The alleged basis for the motion was that John Fay had been called to military service in the United States Navy for the period of July 21 through August 1, 1997, preventing him from attending the trial on August 1. The court sustained this motion without a hearing and reset the trial for August 21, 1997.

On August 18, 1997, the appellants filed a motion to amend their petition for a third time, seeking to amend their Count I to a breach of contract claim, which motion was denied by the court. John Fay and Robin Farms also filed a "Motion For Recusal of Honorable Gary E. Ravens," alleging that on August 10, 1997, they learned that Judge Ravens, while in private practice, had represented respondent Mary Bartholome, resulting in a conflict of interest requiring his recusal, pursuant to Rule 2, Canons 1, 2, and 3 D of the Code of Judicial Conduct. The court denied the motion on August 20, 1997. On August 18, 1997, John Fay and Robin Farms filed a second motion for continuance, again alleging that John Fay could not attend the scheduled trial date due to his military service. The court denied the motion on August 20, 1997.

On August 21, 1997, a writ of prohibition was filed in this court, seeking a writ requiring Judge Ravens to recuse himself and to grant John Fay and Robin Farms's motion for continuance. On August 21, 1997, this court granted a preliminary writ, directing Judge Ravens to refrain from any further action in the case. On October 21, 1997, this court entered an order dissolving its preliminary writ, finding that the basis for it was no longer viable.

On November 4, 1997, the trial court reset the case for trial on December 19, 1997. Also on this date, John Fay and Robin Farms filed a "Motion For Change of Judge For Cause," pursuant to Rule 51.05(d), again alleging that, because Judge Ravens had previously represented Mary Bartholome in three cases, he should recuse. The motion was denied on December 2, 1997. On December 18, 1997, John Fay and Robin Farms filed a third motion for continuance, again alleging that John Fay had been called to military service for the period during which the trial was set. The motion was accompanied by a document which purported to be a

copy of his order directing him to report for duty and by John Fay's affidavit, wherein he stated that all facts contained in the motion were true and correct. On that same day, the trial court set the hearing on the motion for the same date as the trial, December 19, 1997, and directed John Fay and Robin Farms to produce at the hearing K.R. Meier, the person who had purportedly signed John Fay's order to report for duty.

On December 19, the motion was heard. John Fay and Robin Farms did not produce K.R. Meier or present any evidence, choosing to stand on the purported order to report for duty and John Fay's affidavit. The court denied the motion for continuance and proceeded to trial. At trial, the court took up Counts I and II of the appellants' petition and found in favor of the respondents on these counts because the appellants refused to present any evidence in support thereof. Thereafter, the respondents asked the court to take up and consider their counterclaim for ejectment as to Steven and Linda Fay, who, at that time, were still living in the house on the farm, and the court entered judgment in favor of the respondents on their counterclaim as to Steven and Linda Fay. The respondents next sought leave to file a fourth motion for sanctions against the appellants, and the court gave them until January 15, 1998, to file their motion. On February 2, 1998, the court entered a written judgment as to its December 19 th rulings.

On January 8, 1998, the respondents served their fourth motion for sanctions on the appellants' attorney, wherein they alleged that the appellants' original, first amended, and second amended petitions had no factual or legal validity and had been filed in order to improperly harass the respondents and stop the sale and transfer of the farm to Beeler Farms. In the motion, the respondents requested that the court impose severe sanctions upon the appellants as a deterrent and order them to pay for their attorney fees and for their time and expenses incurred in defending the case. The respondents filed their motion for sanctions with the court on January 9, 1998. On March 16, 1998, the trial court sustained the motion for sanctions, finding that they were appropriate pursuant to Rule 55.03(c), against John Fay and Robin Farms and awarding them $5,000 for attorney fees; against Harlow Fay and Karen Fay in the amount of $500 for attorney fees; and against Robert Wheeler, the appellants' attorney, in the amount of $250 for attorney fees.

This appeal follows.

### Appellate Jurisdiction

Before we can address the merits of the appellants' appeal, we must initially address the respondents' assertion that we do not have jurisdiction to hear: (1) the appellants' claims in Points I–IV because their jurisdictional statement does not comply with Rule 84.04; and (2) their claims in Points I, III, and IV because, as to these points, their notice of appeal does not comply with Rule 81.08(a).

### Appellants' Jurisdictional Statement

■ Rule 84.04 requires that the appellants' brief contain a concise statement of the grounds on which appellate jurisdiction is invoked. Rule 84.04(a). The rule further provides that:

> **Jurisdictional Statement.** Bare recitals that jurisdiction is invoked "on the ground that the construction of the Constitution of the United States or of this state is involved" or similar statements or conclusions are insufficient as jurisdictional statements. The jurisdictional statement shall set forth sufficient factual data to demonstrate the applicability of the particular provision or provisions of Article V, Section 3, of the Constitution whereon jurisdiction is sought to be predicated.

Rule 84.04(b). The appellants' jurisdictional statement reads:

> This is an appeal from judgment, judgment for summary judgment, sanctions, order of eviction, and other orders in the Circuit Court of Linn County, Missouri. Appellate jurisdiction is vested in this Court pursuant to Article V, Section 3, of the Missouri Constitution, 1945.

It does not comply with Rule 84.04(b) because: (1) it is a bare recital of our jurisdiction being invoked under Article V, Section 3

of the Missouri Constitution in that it does not set forth "sufficient factual data" as required by Rule 84.04(b); and (2) it does not clearly identify what final, appealable order of the Circuit Court of Linn County, Missouri, is being appealed.

Although the appellants' violation of Rule 84.04 is a sufficient basis upon which to dismiss their appeal, we decline to do so because we are able to determine our jurisdiction from their brief and the record and because it is our preference to dispose of cases on the merits rather than to dismiss them for deficiencies in the briefs. *Jordan v. Stallings,* 911 S.W.2d 653, 664 (Mo.App. 1995). However, we caution the appellants' counsel that, in the future, we may not be so forgiving of Rule 84.04 violations.

### Appellants' Notice of Appeal

Rule 81.08(a) requires that the notice of appeal specify the judgment or order being appealed. Hence, the respondents claim that, because the appellants only attached a copy of the trial court's March 16, 1998, order sanctioning John and Karen Fay, Robin Farms, Harlow Fay, and their attorney, but did not attach that portion of the judgment disposing of the appellants' claims or the respondents' counterclaim, the March 16 order is the only ruling from which the appellants can raise claims on appeal. Thus, the respondents contend that because the appellants' Points I, III, and IV have no relation to the March 16 order, but relate only to the court's earlier orders of April 22, 1997, and February 2, 1998, then this court has no jurisdiction to address their Points I, III, and IV. We disagree.

"Technical adherence to the formal averments of a notice of appeal is not jurisdictional, and the averments are to be liberally construed to permit appellate review so long as the opposing party is not misled to his or her irreparable harm." *L.J.B. v. L.W.B.,* 908 S.W.2d 349, 351 (Mo. *banc* 1995). Here, the appellants did not technically comply with Rule 81.08(a) as to their notice of appeal when they failed to attach copies of the trial court's April 22, 1997, and February 2, 1998, orders which were part of the court's judgment. However, the respondents do not allege how they have been prejudiced by this failure. As such, we are free to exercise our jurisdiction as to the merits of their claims raised in Points I, III, and IV.

### Appellants' Appeal

#### I.

In Point I, John Fay and Robin Farms claim that the trial court erred in denying their application for a change of judge for cause, filed pursuant to Rule 51.05(d), because a reasonable person would have questioned the impartiality of Judge Ravens's presiding over their case in that, while in private practice, he represented Mary Bartholome, one of the respondents. Although Rule 51.05 provides time limits for filing an application for a peremptory disqualification of a judge, as to an application for disqualification for cause, pursuant to Rule 51.05(d), such as the one filed in this case, these time limits do not apply. In any event, there is no dispute here as to the timeliness of or the manner in which John Fay and Robin Farms filed their application. The dispute arises over whether Judge Ravens's prior representation of Mary Bartholome required him to recuse himself for cause.

We will affirm a trial court's denial of an application for change of judge for cause unless the court abused its discretion. *State ex rel. Bates v. Rea,* 922 S.W.2d 430, 431 (Mo.App.1996). An abuse of discretion occurs when the court's order is "clearly against the logic of circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Markovitz v. Markovitz,* 945 S.W.2d 598, 599 (Mo.App.1997). "If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said the court abused its discretion." *Id.* at 599.

Although authorizing a change of judge for cause, Rule 51.05(d) does not provide guidance as to what qualifies as "cause," requiring a judge to recuse; consequently, we turn to § 476.180 and Rule 2, Canon 3 D of the Code of Judicial Conduct, which do. Section 476.180 provides that "[n]o judge of any court of record, who is interested in any suit or

related to either party, or who shall have been of counsel in any suit or proceeding pending before him, shall, without the express consent of the parties thereto, sit on the trial or determination thereof." The specific instances delineated in the statute have no application here. Hence, we turn to Rule 2, Canon 3 D.

■ Rule 2, Canon 3 D provides, in pertinent part, as follows:

D. Recusal

(1) A judge should recuse in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where the judge:

(a) has a personal bias or prejudice concerning the proceeding;

(b) served as a lawyer in the matter in controversy, . . . ;

(c) knows that the judge . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding . . . ;

(d) or a spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party; '

(ii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iii) is to the judge's knowledge likely to be a material witness in the proceeding. . . .

None of the specified instances found in the rule apply in this case. However, the phrase "including but not limited to" signifies that a judge's duty to disqualify is not limited to the instances specified in the rule. *State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 698 (Mo. App.1990). "No guidelines or canons could set forth standards which would deal with every conceivable motion which might be filed by a party." *State v. Cruz*, 517 A.2d 237, 241 n. 1 (R.I.1986). Consequently, the Code does not provide specific guidelines as to how to determine what factual situations would fall under the "including but not limited to" language of Rule 2, Canon 3 D(1).

The determination must be made on a case-by-case basis.

■ It is well settled that a judge, pursuant to Rule 2, Canon 3 D(1) and in accordance with Rule 2, Canons 2 and 3(C), which provide that he or she should avoid the appearance of impropriety and shall perform judicial duties without bias or prejudice, respectively, must recuse in any proceeding in which his or her impartiality might reasonably be questioned by reason of actual bias and prejudice or an appearance of impropriety. *State v. Nicklasson*, 967 S.W.2d 596, 605 (Mo. banc 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 549, 142 L.Ed.2d 457; *State v. Kinder*, 942 S.W.2d 313, 321 (Mo. banc 1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 149, 139 L.Ed.2d 95 (1997); *State v. Smulls*, 935 S.W.2d 9, 16–17 (Mo. banc 1996), *cert. denied*, 520 U.S. 1254, 117 S.Ct. 2415, 138 L.Ed.2d 180 (1997); *State v. Taylor*, 929 S.W.2d 209, 220 (Mo. banc 1996), *cert. denied*, 519 U.S. 1152, 117 S.Ct. 1088, 137 L.Ed.2d 222 (1997); *State v. Nunley*, 923 S.W.2d 911, 918 (Mo. banc 1996), *cert. denied*, 519 U.S. 1094, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). There is a presumption that a trial judge would not undertake to preside over a case where his or her impartiality might reasonably be questioned. *Kinder*, 942 S.W.2d at 321. However, under the Code this presumption is rebutted, requiring a judge to recuse himself or herself, with or without an application, where there is actual bias and prejudice, or an appearance of impropriety. Rule 2, Canon 3 D(1); *Kinder*, 942 S.W.2d at 321; *State v. Novak*, 949 S.W.2d 168, 170 (Mo.App.1997); *State v. Lee*, 948 S.W.2d 627, 629 (Mo.App.1997).

■ Under Rule 2, Canon 3 D(1), the test for determining disqualification is whether a reasonable person would have factual grounds to doubt the impartiality of the court. The term "reasonable person" is interchangeable with the terms "objective onlooker" and "disinterested bystander." *Haynes v. State*, 937 S.W.2d 199, 203 (Mo. banc 1996).

■ Here, John Fay and Robin Farms claim that the prior representation by Judge Ravens of Mary Bartholome, one of the par-

ties, demonstrated both actual bias and prejudice and an appearance of impropriety, requiring the trial court to recuse for cause. The question for us is whether under the Code the presumption of the trial court's impartiality was overcome on either basis.

It is vital to public confidence in the legal system that decisions of the court are not only fair, but also appear fair. Thus, whether the disqualification of a judge hinges on a statute or on a rule, we adhere to the liberal construction of that statute or rule in favor of the right to disqualify. A liberal construction is necessary if we wish to promote and maintain public confidence in the judicial system.

*Wesolich,* 794 S.W.2d at 695. *See* Rule 2, Canon 2A (requiring a judge to promote public confidence in the impartiality of the judiciary). In other words, in order to promote public confidence in the impartiality of the judiciary, as required by Rule 2, Canon 2A, the Code requires a judge to err on the side of caution by favoring recusal to remove any reasonable doubt as to his or her impartiality. The proposition of erring on the side of caution by favoring recusal is further corroborated by the use of the word "might" in Rule 2, Canon 3 D(1) in the phrase "[a] judge should recuse in a proceeding in which the judge's impartiality *might* reasonably be questioned." (Emphasis added.) As defined in WEBSTER'S NEW WORLD COLLEGE DICTIONARY 859 (3d ed.1997), "might" means "expressing esp. a shade of doubt or a lesser degree of possibility."

In alleging actual bias and prejudice, John Fay and Robin Farms point to the prior representation by Judge Ravens of Mary Bartholome and, in addition, alleged that:

Appellant's [sic] requested recusal in the instant case, and we have evidence of judicial bias by the Trial Court giving his former client possession of the farm when there was no proper eviction notice.

Appellants showed prejudice by the Court's rulings in the case on the Motion for Summary Judgment wherein he stated there was a material question of fact as to possession of the farm, (L.F.135), then notwithstanding that finding erroneously granted the possession to his former client, Mary Bartholome (L.F.136).

They further alleged that actual bias and prejudice was demonstrated by the fact they "lost on every point raised" at trial.

"The mere fact that rulings are made against a party does not show bias or prejudice on the part of the judge." *Bruflat v. Mister Guy, Inc.,* 933 S.W.2d 829, 836 (Mo.App.1996). This is so because any alleged bias or prejudice on the part of the judge, to be disqualifying, must stem from an extrajudicial source. *Haynes,* 937 S.W.2d at 203. Here, other than the prior representation, John Fay and Robin Farms did not demonstrate that there existed any extrajudicial animosity by Judge Ravens against them. Hence, under these facts, we do not believe that actual bias and prejudice was shown, requiring Judge Ravens to recuse for cause under the Code. As such, we now turn to the issue of whether there existed an appearance of impropriety requiring his recusal.

Rule 2, Canon 3 D(1) recognizes that "[o]ne of the fundamental precepts which govern the sound administration of justice is that, not only must justice be done, an appearance of justice must be maintained." *Barker v. Secretary of State's Office,* 752 S.W.2d 437, 439 (Mo.App.1988). In other words, "[o]ne of the very objects of law is the impartiality of its judges in fact and appearance." *Liteky v. United States,* 510 U.S. 540, 558, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (Kennedy, J., concurring). The duty under Rule 2, Canon 3 D(1), to recuse where there is an appearance of impropriety, is a duty owed to the public in order to promote confidence in the impartiality of the judiciary. In this respect, Rule 2, Canon 2A provides that a "judge's conduct at all times should promote public confidence in the integrity and impartiality of the judiciary." In promoting this public confidence in the judiciary, Missouri employs a reasonable person standard, which is an objective standard, in determining the existence of an appearance of impropriety. Thus, Missouri has adopted an objective standard, rather than a subjective standard, for determining, under Rule 2, Canon 3 D(1), whether a judge's impartiality

is reasonably subject to question. *See Haynes*, 937 S.W.2d at 203; *Smulls*, 935 S.W.2d at 27. Accordingly, the existence of an appearance of impropriety under Rule 2, Canon 3 D(1) is based on the perception of a member of the general public, not one trained in the law. *Haynes*, 937 S.W.2d at 203; *Wesolich*, 794 S.W.2d at 698. *See also United States v. DeLuna*, 763 F.2d 897, 907 (8 th Cir.1985).

▮▮▮▮▮▮ "Once a judge whose impartiality toward a particular case may reasonably be questioned presides over that case, the damage to the integrity of the system is done." *Durhan v. Neopolitan*, 875 F.2d 91, 97 (7 th Cir.1989). Thus, it is irrelevant, in determining whether there is an appearance of impropriety, whether the trial judge was actually biased or prejudiced against a party. *Taylor*, 929 S.W.2d at 220. Accordingly, a judge's belief that he or she can be impartial has no bearing on the facts that give rise to the appearance of impropriety. Unless the basis for the appearance of impropriety is removed, the appearance remains and requires recusal of the judge, regardless of the trial judge's assurances of impartiality. Rule 2, Canon 3 D(1).[3] Hence, decisions involving actual bias and prejudice, holding that a trial judge is in the best position to determine his or her impartiality, have no application to a determination of whether there exists an appearance of impropriety requiring recusal. *See Nunley*, 923 S.W.2d at 917–18 (holding that in cases where actual bias and prejudice on the part of the judge has been alleged, that particular judge "is in the best position to determine if recusal is necessary," but recognizing that "[i]f the record demonstrates a reasonable person would find an appearance of impropriety, the canon compels recusal"). Applying such a presumption would destroy the objective standard used to determine the existence of an appearance of impropriety. In that regard, the United States Court of Appeals for the Seventh Circuit stated in *In re Mason*, 916 F.2d 384, 386 (7 th Cir.1990) that:

> [a]n objective standard creates problems in implementation. Judges must imagine how a reasonable, well-informed observer of the judicial system would react. Yet the judge does not stand outside the system; as a dispenser rather than a recipient or observer of decisions, the judge understands how professional standards and the desire to preserve one's reputation often enforce the obligation to administer justice impartially, even when an observer might be suspicious. Judges asked to recuse themselves hesitate to impugn their own standards; judges sitting in review of others do not like to cast aspersions. Yet drawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard under § 455(a)[4] into a demand for proof of actual impropriety. So although the court tries to make an external reference to the reasonable person, it is essential to hold in mind that these outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.

Common sense and logic would support the proposition that outside observers, as opposed to members of the judiciary, would be far less inclined to credit judges with impartiality and mental discipline.

Further corroboration for not engaging in a legal presumption as to a trial judge's being in the best position to judge his or her own impartiality when the basis for recusal is an appearance of impropriety emanating from a prior relationship between the judge and one of the parties, can be found in Rule 2, Canon 3 D(1) which, as discussed, *supra*, compels recusal when a judge:

---

**3.** In this regard, Rule 2, Canon 3E provides that a judge recused by the terms of Rule 2, Canon 3D(1)(c) or Canon 3D(1)(d) may, instead of withdrawing from the proceeding, disclose on the record the basis of the recusal. If, based on such disclosure, the parties and attorneys all agree in writing that the judge's basis for recusal is immaterial or insubstantial, the judge is no longer required to recuse.

**4.** 28 U.S.C. § 455(a) (1993) provides in pertinent part that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." This language is virtually identical to the language used in Rule 2, Canon 3D(1).

(b) served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

. . .

(d) or a spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party; . . . .

Rule 2, Canon 3 D(1)(b), (d). When these types of relationships exist, in spite of the fact that a judge might assert that he or she could still be fair and impartial, the Code compels recusal because common sense and logic tell us that the appearance of impropriety is such that a reasonable person would never believe in the judge's impartiality, regardless of his or her assurances.

■ With the foregoing principles to guide us, we now turn to the merits of the issue of whether Judge Ravens's prior representation of Mary Bartholome required his recusal for an appearance of impropriety.

While there is no precise formula to be used in deciding whether a judge's prior representation of a party to the lawsuit with regard to a matter unrelated to the current litigation would create an appearance of impropriety, we believe there are several factors in this case that are significant and are required to be considered in making our decision in this case. These include: (1) how recent was the judge's representation of Mary Bartholome; (2) the length of time that he represented her; (3) the number of cases in which he represented her; (4) the compensation paid him; (5) the similarity of the current lawsuit to the one(s) in which he represented her; and (6) whether he voluntarily made full disclosure of his representation of Mary Bartholome to all parties, even where none was required by the rules.

John Fay and Robin Farms claim that Judge Ravens represented Mary Bartholome in three separate cases: (1) in the Estate of Donna Kay Sensintaffar, wherein he was paid $13,031 for his services; (2) by filing a motion to intervene in the case of *Bank of Brookfield–Purdin v. Smith*, wherein he was paid an unknown sum for his services; and (3) by filing her answer to an interpleader petition in the case of *First Missouri Federal Savings and Loan Association v. Leroy Duncan and Mary Bartholome*, wherein he was paid an unknown sum for his services. However, our reading of the record reveals that John Fay and Robin Farms's characterization that Judge Ravens represented Mary Bartholome in three separate cases is not totally accurate.

The record reveals that Judge Ravens served as the attorney for the estate of Donna Kay Sensintaffar between January 2, 1991, and October 22, 1992, while Mary Bartholome was the personal representative. In that capacity, on or about January 17, 1991, Judge Ravens filed a motion to intervene on her behalf as personal representative of the estate in the case of *Bank of Brookfield–Purdin v. Smith* on the basis that the estate had a direct pecuniary interest in certain bank accounts and certificates of deposit held by the bank that were related to the lawsuit. And, on or about June 6, 1991, Judge Ravens filed an answer to an interpleader action on behalf of Mary Bartholome as personal representative of the estate in the case of *First Missouri Federal Savings and Loan Association v. Leroy Duncan, the personal representative of the estate of Donald Sensintaffar and Mary Bartholome, the personal representative of the estate of Donna Sensintaffar*, claiming that the certificates of deposit owned by Donald Sensintaffar passed to Donna Sensintaffar upon his death and thereafter, upon her death, passed to her estate. The record further reveals that in October 1992, the estate of Donna Sensintaffar paid Judge Ravens $13,031 for his services in representing the estate. It is clear from the record that Judge Ravens did not represent Mary Bartholome in three separate cases, as John Fay and Robin Farms allege. All three instances cited by them relate to his work as the attorney for the estate of Donna Sensintaffar between January 2, 1991, and October 22, 1992, approximately four years before John and Karen Fay and Harlow Fay filed their original petition in this case. Further, although Mary Bartholome hired Judge Ravens, he only rep-

resented her in her representative capacity for the estate, with his attorney's fees of $13,031 being paid out of the estate's funds, see § 473.153.3, and not by her.

Although we would admit that Judge Ravens's prior representation of Mary Bartholome might initially give a reasonable person reason to pause and contemplate his impartiality in the case, we believe ultimately, after closer examination, that a reasonable person could conclude that he could be impartial. Hence, we cannot find that there was an appearance of impropriety by his representation of her.

■ Although a judge should never disqualify himself or herself unnecessarily, *State v. Garner*, 760 S.W.2d 893, 906 (Mo.App. 1988), out of an abundance of caution it may have been better for the judge here to have recused. However, we cannot say that his refusal to do so was "clearly against the logic of circumstances then before [him] and [was] so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Markovitz*, 945 S.W.2d at 599. Hence, we find that the trial court did not abuse his discretion or err in denying John Fay and Robin Farms's Rule 51.05(d) motion for change of judge for cause on the basis of actual bias or prejudice or an appearance of impropriety.

Point denied.

## II.

■ In Point II, the appellants, John and Karen Fay, Robin Farms, and Harlow Fay, claim that the trial court lacked jurisdiction to enter sanctions against them and their attorney because, in filing their motion for sanctions, the respondents violated Rule 55.03(c), in that the rule required them to wait thirty days after serving their motion on the appellants before filing it with the court; however, they served the appellants on January 8, 1998, and filed the motion with the court on January 9, 1998. Rule 55.03(c)(1)(A), governing court sanctions for violations of Rule 55.03(b), concerning representations of parties to the court in documents filed or submitted to it, provides, in pertinent part, as follows:

(1) *How Initiated.*

(A) By Motion. A motion for sanctions under this Rule 55.03 shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate Rule 55.03(b). The motion shall be served as provided in Rule 43.01. The motion shall not be filed with or presented to the court unless within thirty days after service of the motion the challenged claim, defense, request, demand, objection, contention, or argument is not withdrawn or appropriately corrected....

This rule prohibits a movant for sanctions from filing its motion with the trial court before the thirty-day period after serving the motion on the other party has expired. Rule 55.03(c)(1)(A). The apparent purpose of this thirty-day period is to allow the non-moving party an opportunity to take corrective action as to his or her alleged violation of Rule 55.03(b) prior to the court ruling on such a motion, thereby conserving judicial resources if such corrective action is taken. The issue for us to decide is whether, in this case, the respondents prematurely filed their motion for sanctions with the trial court, thereby depriving it of jurisdiction to enter sanctions on their motion against John and Karen Fay, Robin Farms, Harlow Fay, and their attorney.

The record reflects that the respondents served a copy of their fourth motion for sanctions on the appellants, as provided in Rule 43.01(c)(1), by mailing a copy of the same to the appellants' attorney on January 8, 1998. On the following day, the respondents filed their motion with the court, thereby violating the mandatory thirty-day period provided for in Rule 55.03(c)(1)(A). As a result, the trial court was not authorized to enter sanctions against John and Karen Fay, Robin Farms, Harlow Fay, and their attorney, *Weidner v. American Family Mut. Ins. Co.*, 928 S.W.2d 401, 404 (Mo.App.1996), requiring us to reverse on this issue.

## III.

■ In their Point III, the appellants, John Fay and Robin Farms, claim that the trial court erred in overruling their December 18, 1997, motion for a continuance pursu-

ant to Rule 65 and the SSCRA. Specifically, they claim that because the appellant, John Fay, had been called to military service in the United States Navy on December 18, 1997, the day before the cause was set for trial, and their ability to go forward with their case would have been materially affected by reason thereof, the court abused its discretion in overruling their motion for continuance. We disagree.

Rule 65 governs continuances in civil cases and provides that a continuance can be granted for "good cause shown." Rule 65.01. "The grant or denial of an application for continuance ... rests within the sound discretion of the trial court." *Harris v. Desisto*, 932 S.W.2d 435, 439 (Mo.App.1996). No abuse in denying the continuance will be found unless the trial court acted arbitrarily or capriciously. *Id.* at 439.

John Fay and Robin Farms based their motion for continuance on the application of the SSCRA to the instant case. The question we must decide is whether the trial court abused its discretion in finding that good cause did not exist for granting the continuance requested.

■ The SSCRA provides, in pertinent part:

At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act ... unless, in the opinion of the court, the ability of the plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service.

50 U.S.C. § 521. The SSCRA's requiring a continuance is triggered by a showing of the movant that he or she is in military service. 50 U.S.C. § 521. However, a motion for continuance pursuant to the SSCRA is not self-proving or evidence of its contents. *Keith v. Burlington N. R.R. Co.*, 889 S.W.2d 911, 925 (Mo.App.1994). The burden is on the movant to prove the basis alleged for the motion. *Id.* at 925.

The hearing on John Fay and Robin Farms's motion for continuance was held on December 19, 1997. They did not call any witnesses in support of their motion, but attempted to satisfy their burden on their motion by relying on (1) John Fay's affidavit, which was filed with the motion, wherein he stated that the facts stated in the motion were true and correct, and (2) a document purporting to be a copy of the order directing him to report for duty.

John Fay's purported order to report to duty appeared to be printed on Department of Navy stationery and was signed by a K.R. Meier, without providing his or her rank or office. The record indicates that the trial court was skeptical from the outset as to the authenticity of the document. In this regard, the trial court noted that John Fay had been called for military service on the previous occasions when the case was set to go to trial. Given its suspicions as to the authenticity of the document and the necessity of the previous continuances predicated on John Fay's military service, the trial court set the motion for hearing and advised John Fay and Robin Farms to produce at the hearing the officer or officers who had ordered John Fay to duty, which they did not do, leaving the court to decide their motion on John Fay's affidavit and his purported order to report for duty.

As to John Fay's affidavit, "[t]he credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of their testimony." *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. *banc* 1988). Here, the trial court found that the reason stated for John Fay and Robin Farms's motion for continuance was "not credible but contrived," obviously finding that John Fay's allegations in his affidavit were not credible, which was within its discretion. *Harris*, 932 S.W.2d at 439. Not believing John Fay's allegations in his affidavit, that left only the alleged order for John Fay to report for duty to support his and Robin Farms's motion for continuance.

■ It goes without saying that the trial court was not required to accept the alleged order to report for duty at face value. "Before a document may be received in evidence, it must meet a number of foundational requirements including: relevancy, authentication, the best evidence rule, and hearsay." *Hadlock v. Director of Revenue*, 860 S.W.2d 335, 337 (Mo. *banc* 1993). The authenticity of a document cannot be assumed, and what it purports to be must be established by proof. *Heutel v. Stumpf*, 783 S.W.2d 421, 422 (Mo.App.1989). Thus, before a writing can be admitted into evidence and considered by the trial court, its proponent must show that it is, in fact, what it is purported to be. *Partney v. Reed*, 889 S.W.2d 896, 901 (Mo. App.1994). The law is well settled that the mere fact that a letter purports to have been written and signed by one in authority to do so is, in itself, insufficient to establish the authenticity and genuineness of the letter. *State ex rel. Div. of Family Servs. v. Brown*, 897 S.W.2d 154, 157 (Mo.App.1995).

■ The trial court is given wide latitude in ruling on whether to admit or exclude evidence, and absent a clear abuse of discretion, the appellate court will not interfere with that ruling. *State v. Blakeburn*, 859 S.W.2d 170, 177 (Mo.App.1993). "It is only when the trial court's ruling on admissibility of evidence clearly offends the logic of the circumstances or when it becomes arbitrary and unreasonable that the appellate court will find an abuse of discretion." *Id.* at 177. "Furthermore, the determination of whether a sufficient foundation was laid for admission of the evidence is within the sound discretion of the trial court." *Id.* at 177.

In this case, other than John Fay's assertions in his affidavit, which the trial court obviously disbelieved, John Fay and Robin Farms offered no evidence establishing the alleged order's authenticity. As such, the trial court was free to find that the document was not authentic. And, because the trial court found that the authenticity of the order was not established, it was not admissible in evidence, *Brown*, 897 S.W.2d at 157–58, and was not required to be considered by the court in ruling on the motion for continuance.

For the reasons stated, we find the trial court did not err in denying John Fay and Robin Farms's motion for continuance.

Point denied.

## IV.

■ In their Point IV, the appellants claim that the trial court erred in sustaining the motion for summary judgment of the owners of the farm, the respondents, on their counterclaim for ejectment because there was a genuine dispute of material fact as to whether they had the legal right to its possession. Specifically, the appellants claim that there was a factual dispute as to this issue because the respondents were required, but failed, to give Robin Farms statutory notice, under § 441.050, of their intent to terminate its alleged year-to-year tenancy.

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. We accord the non-movant the benefit of all reasonable inferences from the record.

Our review is essentially *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. *banc* 1993) (citations omitted). Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377. We will affirm summary judgment if the judgment is sustainable as a matter of law under any legal theory. *Charles Maggard Agency, Inc.*

*v. Missouri Pub. Entity Risk Management Fund,* 974 S.W.2d 671, 673 (Mo.App.1998).

To be entitled to summary judgment under Rule 74.04, the respondents, as the movants, were required to establish that (1) there was no genuine dispute as to the material facts on which they relied to recover and had the burden of persuasion at trial, and that (2) on these undisputed facts, they were entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Fin.,* 854 S.W.2d at 381. Further, as claimants, the respondents were required to establish, with undisputed evidence, each and every element of their counterclaim for ejectment. *ITT Commercial Fin.,* 854 S.W.2d at 381. Thus, to be entitled to summary judgment on their counterclaim, the respondents were required to prove by pleadings, discovery, or affidavits, Rule 74.04(c)(1); *ITT Commercial Fin.,* 854 S.W.2d at 380, that: (1) Robin Farms actually possessed the farm at the commencement of the action, and (2) the respondents were legally entitled to its possession. §§ 524.010,[5] 524.080;[6] *Jansen v. Pobst,* 922 S.W.2d 43, 47 (Mo.App.1996).

As to the elements of proof as to the respondents' claim for ejectment, there is no dispute that Robin Farms was in actual possession of the farm at the time the action for ejectment was brought. The dispute centers on the second proof element, that the respondents were legally entitled to possession of the farm. In this respect, the respondents alleged in their motion for summary judgment that, under the undisputed facts, they were legally entitled to possession of the farm because: (1) they owned the farm; (2) their lessee, Harlow Fay, was not legally entitled to possession of the farm because it had breached the express terms of its lease with the respondents by assigning it to Robin Farms without their express written consent, causing the lease to be in default; and (3) Robin Farms was not legally entitled to possession of the farm because Harlow Fay's assignment to it of its lease without the respondents' express written consent was void, creating no legal tenancy in Robin Farms, requiring statutory notice to it to terminate or quit possession.

The appellants contend that before the respondents could eject Robin Farms from the farm, § 441.050 required them to give it notice of their intent to terminate its year-to-year tenancy. In this respect, § 441.050 states that "[e]ither party may terminate a tenancy from year to year by giving notice, in writing, of his intention to terminate the same, not less than sixty days next before the end of the year." By its terms, this section does not apply unless a tenancy exists. Hence, in determining whether notice was required from the respondents to Robin Farms to allow them to proceed in ejectment, we must decide whether Robin Farms was, in fact, a lawful tenant of the farm.

The lease between the respondents and Harlow Fay provided, in pertinent part, as follows:

4. Lessee further covenants and agrees:

. . .

g. To retain possession of the premises during the term hereof, and to not assign or sub-let without Lessor's express written consent. (No such consent shall be a waiver, and any subsequent assignment or sublease shall require a new and additional express written consent.)

. . .

7. If any default be made in the payment of rent or any part thereof, or if Lessee shall assign or sub-lease without consent ... Lessor shall have the right to re-enter and take possession of the land and Lessee, upon written demand, shall peacefully surrender possession thereof to Lessor, and all rights and interest of Lessee to possession and control hereunder shall cease and terminate. . . .

To entitle the plaintiff to recover, it shall be sufficient for him to show that, at the time of the commencement of the action, the defendant was in possession of the premises claimed, and that the plaintiff had such right to the possession thereof as is declared by this chapter to be sufficient to maintain the action.

5. Section 524.010 provides as follows: "An action for the recovery of the possession of premises may be maintained in all cases where the plaintiff is legally entitled to the possession thereof."

6. Section 524.080 provides as follows:

Hence, according to the express terms of the lease, Harlow Fay could not assign the lease without first receiving the respondents' express written consent to do so. If it did, it would be in default of the lease, giving the respondents the right to re-enter and take possession of the farm.

There is no dispute as to the respondents' right to restrict Harlow Fay's ability to assign the lease by requiring their express written consent to do so. *Clasen v. Moore Bros. Realty Co.*, 413 S.W.2d 592, 601 (Mo. App.1967). Thus, by assigning the lease to Robin Farms, without having done so, Harlow Fay was in default of the lease. As a result, as to Harlow Fay, the respondents were entitled to possession of the farm. As to Robin Farms, the respondents were also entitled to possession of the farm because the alleged assignment to it by Harlow Fay of the lease was void and did not create any tenancy. *See Hemisphere Tour & Travel, S., Inc. v. B.T. Bones*, 978 S.W.2d 451, 454 (Mo. App.1998); *Conley v. Dee*, 246 S.W.2d 385, 386 (Mo.App.1952). As such, the respondents made a *prima facie* case for ejectment, having demonstrated that Robin Farms was in possession of the farm and that they were legally entitled to possession thereof as to both Harlow Fay and Robin Farms.

In order to defeat the respondents' *prima facie* case for summary judgment, the burden shifted to the appellants to "show—by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by the [respondents] to be above any genuine dispute [was], in fact, genuinely disputed" or that the respondents were not entitled to judgment as a matter of law. *ITT Commercial Fin.*, 854 S.W.2d at 381. Accordingly, the appellants asserted a dispute as to a material fact, the right to possession of the farm by the respondents due to a lack of notice to Robin Farms to terminate its alleged tenancy. With respect to this issue, the appellants could not rest upon the mere allegations or denials in their pleadings, but were required to set forth in their response to the respondents' motion specific facts showing that there was a genuine dispute at trial as to the respondents' right to possession of the farm. *ITT Commercial Fin.*, 854 S.W.2d at 381.

For purposes of Rule 74.04, a "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. Where the "genuine issues" raised by the non-movant are merely argumentative, imaginary or frivolous, summary judgment is proper.

*ITT Commercial Fin.*, 854 S.W.2d at 382.

In contending that the respondents were not entitled to summary judgment on their counterclaim for ejectment because there was a genuine dispute as to whether they were entitled to possession of the farm, the appellants are not disputing the fact that the assignment of the lease by Harlow Fay to Robin Farms was done without the consent of the respondents in violation of the terms of the lease agreement and that the lease was, therefore, in default. What they argue is that, regardless of whether the assignment was defective, they were lawful year-to-year tenants of the farm by reason of actual possession thereof and payments made to the respondents by Robin Farms, or on its behalf, as a tenant, and that this tenancy could not be terminated without legal notice to it from the respondents, as required by § 441.050. In making this argument, they primarily rely on *Busby v. Stimpson*, 542 S.W.2d 551 (Mo.App.1976). Based on this argument, they then contend that the required statutory notice to terminate was not given such that the respondents were not entitled to possession of the farm, requiring their motion for summary judgment to be overruled. The respondents argue that Robin Farms was not a lawful tenant of the farm entitled to statutory notice.

The appellants are correct in their assertion that

"where a tenant enters into the possession of agricultural lands under an oral lease or contract, or one that is otherwise void or defective, and pays rent to his landlord, it creates a tenancy at will and if the tenant remains in possession, by operation of law, it becomes a tenancy from year to year and can be terminated on the part of the

landlord, only, by giving the tenant a written notice to vacate at least 60 days before the end of the year. [Citing predecessor to § 441.050]"

*Jansen,* 922 S.W.2d at 48 (*quoting Coleman v. Fletcher,* 238 Mo.App. 813, 188 S.W.2d 959, 963 (1945)); *Busby,* 542 S.W.2d at 554. Here, as to the manner in which Robin Farms took possession of the farm, the record is undisputed that it did so under a void or defective contract of assignment of a lease, which did not create a tenancy in Robin Farms. Thus, in determining whether a tenancy was created in the fashion asserted by the appellants, entitling it to notice, the issue is whether rent payments were made to the respondents by or on behalf of Robin Farms as tenants.

As to the issue of the respondents' knowledge of Robin Farms being in possession of the farm and claiming to be a tenant, the appellants, in their answer to the respondents' counterclaim for ejectment and in John Fay's affidavit, filed by them in response to the respondents' motion for summary judgment, asserted that various crop payments were made by the Department of Agriculture and the Farm Service Agency to the respondents, as owners, and Robin Farms, as the tenant. In corroboration of Robin Farms's claimed tenancy and these payments, the appellants attached various exhibits to their pleadings. Although the appellants' answer and the affidavit of John Fay did not identify the payments in question as rent payments, the clear inference is that the payments were being made to the respondents for crops raised on the farm during a claimed tenancy of Robin Farms. Furthermore, as to the issue of Robin Farms's tenancy, the trial court readily admitted in its findings that there was a question as to who was entitled to possession of the farm. Under these circumstances, and given the fact that we are to interpret the record in a light most favorable to the nonmovant, *ITT Commercial Fin.,* 854 S.W.2d at 376, we believe a factual dispute was sufficiently raised in response to the respondents' motion for summary judgment as to whether Robin Farms was a lawful tenant of the farm, which entitled it to statutory notice to terminate.

Our inquiry is not complete simply because we have determined that there was a genuine factual dispute as to whether Robin Farms was a year-to-year tenant of the farm which entitled it to statutory notice to terminate. Inasmuch as we are to affirm a summary judgment if it is sustainable on any theory, *Charles Maggard,* 974 S.W.2d at 673, we must still determine if there was a genuine dispute as to the issue of whether Robin Farms received notice to terminate its tenancy. If there was not, then summary judgment for the respondents would still have been proper.

■ With respect to the issue presented, the record reflects that the respondents sent notice to Harlow Fay, John Fay, Steven Fay, and Ellis Burns, the trustee of the Stockwell Land Trusts, of their intent to terminate the lease of Harlow Fay and take possession of the farm as of December 31, 1996. The record further reflects that no notice was given to any party designated as Robin Farms. However, it may be arguable that the notice to John Fay, who was the corporate president of both Harlow Fay and Robin Farms, was sufficient to terminate the tenancy of not only Harlow Fay, but also Robin Farms. This is so in that the knowledge of an agent or officer of a corporation regarding matters within his or her scope of employment and authority and to which his or her employment extends is imputed to the corporate principal. *Southwest Bank v. Hughes,* 883 S.W.2d 518, 522 (Mo.App.1994); *Iota Management Corp. v. Boulevard Inv. Co.,* 731 S.W.2d 399, 410 (Mo.App.1987). In this case, however, this rule would not have any application in that based on the respondents' contentions and the record before us there is no dispute that the notice to terminate given by them, regardless of to whom, was only in reference to any tenancy created by the lease, whereas the tenancy we find to be in genuine dispute is a year-to-year tenancy, which was created by a means other than the lease. Given these circumstances, for purposes of summary judgment, one cannot simply assume that a notice to John Fay to terminate the lease tenancy was intended to also terminate the year-to-year tenancy.

Having found that Robin Farms sufficiently raised a factual dispute as to whether it was a year-to-year tenant of the farm and entitled to statutory notice of the respondents' intent to terminate its tenancy, which was not given, we find that there was a genuine dispute as to whether the respondents were entitled to possession of the farm, a material fact on which they relied for summary judgment on their counterclaim for ejectment. Hence, we find that the trial court erred in sustaining the respondents' motion for summary judgment, requiring reversal of its judgment for the respondents on the same.

### Respondents' Cross–Appeal

### V.

In their sole point on their cross-appeal, the respondents claim that the trial court abused its discretion in sanctioning John and Karen Fay, Robin Farms, Harlow Fay, and their attorney, pursuant to Rule 55.03(c), for $5,750 in that the clear and convincing evidence demonstrated that the respondents suffered damages in the amount of $21,655.59. In that we decided, *supra*, in the discussion of the appellants' Point II, that the trial court lacked jurisdiction to enter any sanctions against John and Karen Fay, Robin Farms, Harlow Fay, and their attorney, the respondents' claim in this point is moot, and we need not address it.

### Conclusion

We affirm that part of the circuit court's judgment wherein it overruled John Fay and Robin Farms's Rule 51.05(d) motion for a change of judge for cause and their motion for continuance. However, we reverse that part of the judgment wherein the court sustained the respondents' motion for summary judgment on their counterclaim for ejectment and entered sanctions against John and Karen Fay, Robin Farms, Harlow Fay, and their attorney and remand the cause for further proceedings consistent with this opinion.

All concur.