**Pheob HAYNES, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. 78776.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1996.

Rebecca L. Kurz, Asst. Public Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Christine M. Blegen, Assistant Attorney General, Jefferson City, for Respondent.

HOLSTEIN, Chief Justice.

Pheob Leroy Haynes was charged by two indictments with a total of thirty-eight felony counts. As part of a plea bargain, Haynes pleaded guilty to sixteen of the counts. He was sentenced to ten consecutive fifteen-year sentences, for the crimes committed when he was sixteen years old, and five consecutive life terms and one consecutive fifteen-year term for the crimes committed two weeks later, when Haynes was seventeen years of age. He then sought post-conviction relief pursuant to Rule 24.035, simultaneously filing a motion for change of judge. Both the change of judge and post-conviction relief were denied. Following opinion by the Missouri Court of Appeals, Western District, this Court granted transfer. The judgment of the trial court denying relief is affirmed.

## I.

The offenses involved here occurred on September 30 and October 14, 1993. On September 30, Haynes and Darrell Blair decided to rob residents of a dwelling in Kansas City, Missouri. While holding the residents at bay with a semi-automatic handgun, Haynes and Blair helped themselves to cash, a television, a stereo, audio tapes, a purse, jewelry, and a car belonging to one of the occupants. During the course of the robbery, Haynes and Blair raped, sodomized and placed their fingers in the vagina of one victim. That victim believed Haynes was going to kill her three-month-old son. After the assault, she was made to lay on the floor and suck blood from Haynes' fingers. Haynes placed the barrel of his pistol in the vagina of another victim. Yet another female victim was taken hostage in order to

make good an escape by Haynes and Blair. While kidnapped, she became the victim of a sexual assault.

Just two weeks later, on October 14, 1993, Haynes went to another house again with the intent of robbing the residents by means of a handgun. This time, Haynes took a car, cash, three televisions, a VCR, and jewelry from the occupants of the house. During the robbery he again sexually assaulted a female victim, at one point inserting a wooden handle into the victim's vagina. He also pistol whipped and beat a male victim with a baseball bat. The assault and sexual attacks continued for more than an hour. All of this conduct led to the filing of two indictments totaling thirty-eight counts.

## II.

On October 20, 1994, Haynes pleaded guilty to seven counts of first-degree robbery, three counts of armed criminal action, three counts of forcible sodomy, two counts of first-degree assault and one count of kidnapping. One first-degree assault charge and the kidnapping charge are class B felonies. All other offenses to which defendant pleaded guilty are class A felonies, carrying a possible life sentence. There was no agreement as to the length of any sentence. In exchange for his plea, the remaining counts were dismissed by the state.

On January 13, 1995, defendant appeared for sentencing before Judge K. Preston Dean. At the sentencing hearing, the trial judge reviewed a presentence investigation report (PSI) and in addition heard testimony from four of the victims. One testified that he had a scar visible on his head. Each time he looked in the mirror he was reminded of the horror of the crime. He testified he no longer felt safe in his own home. Another victim felt she was in an emotional prison since being robbed and sexually attacked. A male victim was unable to sleep. His female companion, a victim of a sexual attack, had also experienced sleeplessness and nightmares. The male victim characterized the one hour and fifteen minute ordeal as not just a robbery but as "terrorism, torture, abuse [and] violence." Another victim of a rape and sexual assault said, "[M]y life was uprooted, it was changed [by] the horror that I felt when I thought [Haynes] was going to kill my three-month-old son."

Judge Dean directed the following comments to movant:

If in the years that I have been reading PSIs I have read a more appalling PSI I cannot right at this moment remember it. Perhaps I have and have been allowed to forget it.

There are no guidelines, of course. There is no book that you can go to and look up what the right sentence might be. The thought is that sentencing involves several factors; one is a deterrent, perhaps to communicate to other members of the community that certain conduct will not be tolerated.

Another element of sentencing is punishment, just straight retribution. Society saying to someone, ["]You can't do that. If you do that, you're going to suffer for it.["]

Rehabilitation is an issue. If I believed that there were some way to ensure that Mr. Haynes could be taken somewhere and rehabilitated and we could be guaranteed that he would not harm another person, I would board that train in a minute. Our society is not interested in spending the kind of money that it takes to change someone. I do not trust the prison system to rehabilitate Mr. Haynes.

Punishment and protection. Punishing Mr. Haynes and protecting society from Mr. Haynes is what I am here for today. Perhaps Mr. Haynes is a nice guy. I doubt it. I believe that you are a monster, and if I could do to you what I want to do to you they would only take parts of you from this room. That's not, however, in the list of options that I have.

The charges in CR94–1226 relate to offenses that occurred on September 30th of 1993, when Mr. Haynes was 16. They are horrible [the offenses are then recited and a fifteen-year sentence is assessed for each] ... Mr. Haynes, make no doubt about it, what I've just said was fifteen years on each and every count in 1226 consecutive. They're horrible. You were 16, that's why I didn't give you life.

Now, that was September 30, 1993. October 14, 1993, fourteen days later, you've had a little time to think about it now and you go out and you committed the offenses in 4259 [the judge then recites the offenses and assesses life imprisonment for those offenses except one, for which a fifteen year sentence is imposed]. I don't want you ever to be outside of the custody of someone who can make every decision in your life. Mr. Haynes, you are a monster. I hope you die in prison. . . .

Thereafter, Haynes filed a pro se Rule 24.035 motion, which was amended by appointed counsel in May of 1995. The amended motion alleged denial of due process because the above admonitions proved Judge Dean was not "fair and impartial" in sentencing Haynes. Concurrently with filing an amended Rule 24.035 motion, movant's counsel filed a motion for change of judge. That motion was overruled. In addition, post-conviction relief was denied without an evidentiary hearing. Haynes appealed.

### III.

■ Movant argues that due process required that Judge Dean sustain the motion for change of judge in the post-conviction proceeding. It is argued that due process mandates recusal where an objective onlooker might reasonably question whether the judge was impartial absent any facts showing an extrajudicial source for the bias. Movant focuses entirely on two or three phrases out of the lengthy sentencing. He claims the statements by the trial judge that if he did what he wanted to, the movant would be "removed from the courtroom in pieces," and the judge's statement that movant was a monster who should die in prison establish a disqualifying bias.

■ In a post-conviction motion, the movant may disqualify a judge on the due process ground that the judge is biased and prejudiced against the movant. *Thomas v. State*, 808 S.W.2d 364, 366–67 (Mo. banc 1991). Our cases have held that a disqualifying bias or prejudice must be one emanating from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learns from participation

in the case. *State v. Hunter*, 840 S.W.2d 850, 866 (Mo. banc 1992); *cert. denied*, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732; *rehearing denied*, 510 U.S. 929, 114 S.Ct. 339, 126 L.Ed.2d 283 (1993). Missouri courts have applied the extrajudicial source limitation when deciding whether a judge should have recused under the due process standard. *State v. Wise*, 879 S.W.2d 494, 523 (Mo. banc 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 757, 130 L.Ed.2d 656 (1995).

The cases involving due process have held that in order for "justice to satisfy the appearance of justice" there must not only be an absence of actual bias but an absence of a probability of unfairness. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Thus, it was held that a "single judge" grand jury could not also preside at a contempt trial involving one who allegedly committed perjury in the grand jury proceeding. *Id.* at 137, 75 S.Ct. at 625–26. The reason for the rule is that a grand jury proceeding is investigatory and ex parte in nature. The judge conducting the proceeding thus attains an adversarial "interest" and the "probability of actual bias" is too great. *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975).

Various other situations have been identified in which the adjudicator was held to have a "probability of actual bias" so that due process required disqualification. Among these cases are those in which the adjudicator had a pecuniary interest in the outcome or where the judge had been the target of personal abuse or criticism from the party before the judge. *Id.* In addition, where the judge is a material witness to relevant facts in the case or makes statements on the record suggesting an ethnic or racial bias, fundamental fairness has been held to require recusal. *State v. Smulls*, 935 S.W.2d 9, 24 (Mo. banc 1996); *see also Berger v. United States*, 255 U.S. 22, 30, 41 S.Ct. 230, 232, 65 L.Ed. 481 (1921).

Most of the cases on recusal of judges have not turned on claims of due process violations but have relied on some disqualifying facts requiring recusal under the appropriate rules

---

or statutes relating to judicial conduct. Although movant does not rely on them in his points relied on, he cites the general disqualification provisions of our Code of Judicial Conduct, Rule 2, Canon 3 D(1)(a).[1] In construing those provisions, this Court has held that the test for a disqualifying bias is whether a reasonable person would have a factual basis to find an appearance of impropriety and thereby doubt the impartiality of the court. *State v. Smulls*, 935 S.W.2d 9, 24; *State v. Nunley*, 923 S.W.2d 911, 918 (Mo. banc 1996). The terms "disinterested bystander," "objective onlooker," and "reasonable person" are interchangeable. *See Boxx v. State*, 857 S.W.2d 425, 428 (Mo.App.1993). A reasonable person, of course, is not one who is ignorant of what has gone on in the courtroom before the judge. Rather, the reasonable person knows all that has been said and done in the presence of the judge. In addition, the reasonable person understands that the judge's role is different during sentencing than at earlier stages of a criminal proceeding. A permissible statement made by a judge at a sentencing might be wholly unreasonable at an arraignment.

In construing our Code of Judicial Conduct, our courts have relied on United States Supreme Court cases construing similar language in federal statutes. One such example is *United States v. Grinnell Corp.*, 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Unlike this case, it did not involve a due process claim. Rather, *Grinnell* involved a construction of 28 U.S.C. § 144 which, in words similar to our Code of Judicial Conduct, provided the judge "shall proceed no further" when it was alleged that the judge "has a personal bias or prejudice either against [the moving party] or in favor of any adverse party...." *Id.* at 583, 86 S.Ct. at 1710. There the trial judge had a pre-trial conference at which the parties submitted

briefs, setting forth the view of each as to the relief to be granted if the government prevailed. The trial judge, after reviewing the documents, said, "You would do better to get together with the government rather than run the risk of what I would say from what I have seen. Let me just assure you of that." *Id.* at 581, 86 S.Ct. at 1709. The court concluded that these statements did not rise to the level of bias and prejudice contemplated by the statute. "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Id.* at 583, 86 S.Ct. at 1710.

The rule as recited in *Grinnell* has been modified by the case of *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). In *Liteky*, aside from using the mandatory "shall disqualify," the statute is strikingly similar to the language in our Code of Judicial Conduct.[2] After considering the extrajudicial source "doctrine," as enunciated in *Grinnell*, the court stated, "It would be better to speak of the existence of a significant (and often determinative) 'extrajudicial source' *factor*, than an 'extrajudicial source' *doctrine*, in recusal jurisprudence." *Id.* at 554–55, 114 S.Ct. at 1157 (emphasis in original). The court went on to articulate a second factor. A disqualifying bias includes one springing from the facts of the case if such bias is "so extreme as to display clear inability to render fair judgment." *Id.* at 551, 114 S.Ct. at 1155.

From the above cases, several different articulations of when due process requires recusal may be extracted. However, none is very helpful absent a factual context that gives meaning to the kind of "bias" that disqualifies a judge. From the *Murchison* and *Larkin* cases, we learn that facts showing the judge has an "interest" in the out-

---

1. A judge should recuse in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where the judge:
   (a) has a personal bias or prejudice concerning the proceeding.

2. 28 U.S.C. § 455, which provides:
   "(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any

proceeding in which his impartiality might reasonably be questioned.
(b) He shall also disqualify in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]"

come of the case require disqualification. *Berger* and *Smulls* teach that the existence of facts indicating the judge is a material witness in the case or indicating the judge has an ethnic or racial bias demand recusal. Finally, *Liteky* gives the example of a disqualifying bias in a criminal juror who after hearing properly admitted evidence of the accused's past crimes determines to find the accused guilty, regardless of the facts of the case. *Id.* at 550, 114 S.Ct. at 1154–55. By implication, similar conduct by a judge would require recusal. The threads common in all of these cases requiring recusal is either a fact from which prejudgment of some evidentiary issue in the case by the judge may be inferred or facts indicating the judge considered some evidence properly in the case for an illegitimate purpose.

■ As noted in *Liteky*, a judge's remarks during a trial, even those that are critical or even hostile to a party, do not support a claim of bias and partiality. *Id.* at 555, 114 S.Ct. at 1157. Rather, the comments must be considered in the context of all statements of the judge and of the circumstances before the trial judge when the statements were made. In the words of *Liteky*:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.

*Id.* at 550–51, 114 S.Ct. at 1155. It could be added that at sentencing, a judge's detached neutrality necessarily disappears. There a judge becomes the conscience of the community, expressing not only society's compassion but, in some cases, expressing its outrage at the depravity of the crime.

■ Movant argues that due process imposes an even more demanding standard than is expressed in *Liteky*. He reads a due process requirement into the phrase "including, but not limited to" in Canon 3 D(1) to require recusal where "the judge's impartiality might reasonably be questioned", regardless of any objective facts indicating a bias having an extrajudicial source or facts indicating a bias making fair judgment impossible. The standard suggested is unacceptable for two reasons. First, the "might reasonably be questioned" standard, without a factual context, is subjective, leaving appellate courts at liberty to find a disqualifying bias from any hostile word, a maximum prison sentence or even an adverse discretionary ruling. Such a vague standard is unworkable. Second, the only basis of the appeal here is a claimed violation of due process. The Due Process Clause has never been held to require recusal of a judge at sentencing or in a post-conviction proceeding based solely on critical or hostile comments during sentencing or imposition of a harsh sentence within the range allowed by law.

Under the facts here, the sentencing judge's alleged "bias" arose from what was asserted in the informations, what he read in the presentence investigation report and what he heard in testimony of the victims regarding their terror and continued emotional suffering at the hands of movant. It cannot fairly be said the judge was so inflamed that he could not weigh the appropriate factors in imposing sentence. Indeed, he considered the relevant factors of deterrence, rehabilitation, protection of the public, and punishment in sentencing movant. Knowing what the judge knew and considering all the judge said, including the comments that movant would have us take out of context, it is neither fair nor reasonable to say that the trial judge's expressed such a "high degree of antagonism as to make fair judgment impossible." While the judge here spoke bluntly, his words of reprobation at a sentencing for a heinous series of crimes do not establish that he had a disqualifying bias against movant either at sentencing or at the post-conviction proceeding. This is because there is not a factual basis from which a reasonable person could infer that Judge Dean had prejudged any issue in the case or that he had based his sentencing or post-conviction ruling on some illegitimate factor. Even assuming that due process imposes not only the "extra-

judicial bias" standard but also an "impossibility of fair judgment" standard, neither was violated by overruling the motion for change of judge.

## IV.

In movant's second point, he alleges that Judge Dean's comments show movant was denied a fair and impartial sentencing and he should have been entitled to an evidentiary hearing on that issue. All the facts to which movant directs us as entitling him to relief are found in the record. As previously noted, the record refutes any claim that Judge Dean possessed a disqualifying bias. Moreover, no facts are alleged regarding the judge's conduct in matters outside the record, as was the case in *Smulls*. The record conclusively refutes the claim that movant was entitled to relief on that basis and, therefore, no hearing need be held. *Rule 24.035(h)*.

## CONCLUSION

The judgment of the trial court is affirmed.

All concur.