Herbert SMULLS, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 81205.

Supreme Court of Missouri,
En Banc.

Jan. 11, 2000.

As Modified on Denial of Rehearing
Feb. 8, 2000.

William J. Swift, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Robert Popper, Burnele V. Powell, Ellen Suni, Kansas City, Christine B. Hickman, San Diego, CA, for amicus curiae.

ANN K. COVINGTON, Judge.

Herbert Smulls, appellant, appeals from his Rule 29.15 hearing denying post-conviction relief. He challenges, among other issues, the ability of any judge in St. Louis County, including the judge who presided over his Rule 29.15 proceeding, to conduct the proceeding fairly and impartially. The judgment is reversed and the cause remanded.

In *State v. Smulls*, 935 S.W.2d 9 (Mo. banc 1996), this Court reviewed appellant's motion to disqualify the trial judge, Judge Corrigan, from presiding over appellant's Rule 29.15 hearing. This Court held that the judge erred in overruling appellant's motions to disqualify and remanded the cause for a hearing before another judge.

After remand, Judge O'Toole,[1] the presiding judge, assigned appellant's case to Judge Campbell. The state filed a motion for change of judge under Rule 55.01. Judge Campbell sustained the motion. The presiding judge then assigned the case to Judge Sweeney. Judge Sweeney recused himself on his own motion. Ap-

---

1. All judges referenced in the opinion were, at all times relevant, judges of the Circuit Court of St. Louis County.

pellant asked for the case to be returned to Judge Campbell. (Judge Campbell later testified in his deposition that he consulted with Judge O'Toole and decided that he should not preside over appellant's post-conviction motion.) The case was assigned to Judge Cohen, who also recused himself from hearing the case. Ultimately the case was assigned to Judge O'Brien.

Over the course of the proceedings, appellant filed several related motions and supplements, including motions to disqualify all past and present St. Louis County judges, a motion to *voir dire* Judge O'Brien, and a motion to disqualify Judge O'Brien. Judge O'Brien overruled the various motions.

In his second point relied on, appellant makes four claims: (1) the motion court should have disqualified all St. Louis County judges; (2) the motion court should have disqualified itself; (3) the motion court should have answered *voir dire* questions directed to it regarding disqualification; and (4) the motion court should have allowed the presiding judge of the Twenty–First Judicial Circuit to hear the motions for disqualification.

■ It is presumed that a judge acts with honesty and integrity and will not undertake to preside in a trial in which the judge cannot be impartial. *State v. Kinder*, 942 S.W.2d 313, 321 (Mo. banc 1996). This presumption is overcome and disqualification is required if a reasonable person would find an appearance of impropriety and doubt the impartiality of the court.[2] *Id.; see also State v. Nunley*, 923 S.W.2d 911, 918 (Mo. banc 1996). In *Haynes v. State*, 937 S.W.2d 199, 203 (Mo. banc 1996), this Court defined "reasonable person" in the context of a test for a disqualifying bias: "A reasonable person . . . is not one who is ignorant of what has gone on in the courtroom before the judge. Rather, the reasonable person knows all that has been said and done in the presence of the judge."

■ There must be a factual context that gives meaning to the kind of bias that requires disqualification of a judge. *Haynes*, 937 S.W.2d at 203. Specifically, a disqualifying bias or prejudice is one that has an extrajudicial source and results in an opinion on the merits on some basis other than what the judge learned from the judge's participation in a case. *State v. Hunter*, 840 S.W.2d 850, 866 (Mo. banc 1992). In cases requiring recusal, the common thread is "either a fact from which prejudgment of some evidentiary issue in the case by the judge may be inferred or facts indicating the judge considered some evidence properly in the case for an illegitimate purpose." *Haynes*, 937 S.W.2d at 204.

■ Appellant's first issue involves his motions requesting disqualification of all of the judges of the Circuit Court of St. Louis County. This Court's decision in *State v. Nunley* controls. In *Nunley*, the acting presiding judge of the Sixteenth Judicial Circuit entered an order that recused all judges of that circuit from hearing the case. 923 S.W.2d at 917. This Court held that the decision to disqualify judges should be made on a case-by-case basis and that "absent agreement by all judges of a circuit, it is improper for a presiding judge to disqualify all judges in a circuit." *Id.* at 918. Similarly, in *State v. Taylor*, 929 S.W.2d 209, 220 (Mo. banc 1996), where the defendant claimed that the resentencing judge would "appear to be giving the original judge a vote of confidence" if the resentencing judge again imposed the death penalty, this Court held that the potential for a claim that one judge ruled merely to support another judge's prior decision is insufficient to warrant disquali-

---

**2.** The standard for disqualification is derived from Rule 2, Canons 2 and 3(C) of the Code of Judicial Conduct, which require a judge to avoid the appearance of impropriety and to perform judicial duties without bias or prejudice. Similarly, Rule 2, Canon 3(D) requires a judge to recuse in a proceeding in which the judge's impartiality might reasonably be questioned.

fication, recognizing that "[i]n many instances, judges reconsider rulings by other judges." *Id.*

Appellant cites *United States v. Jordan,* 49 F.3d 152 (5th Cir.1995), in support of his contention. *Jordan* addressed the disqualification of federal judges under 28 U.S.C. section 455(a). In that case, Judge Harmon presided over Jordan's trial for wire fraud and money laundering, in which there was a receiver for Jordan's company. *Id.* at 156. Before she became a judge, Harmon personally represented the receiver in a related assault case in which Jordan's daughter was the complainant. *Id.* The Fifth Circuit found that Judge Harmon abused her discretion by not recusing herself from Jordan's trial. *Id.* at 158. The court affirmed the conviction but vacated the sentence, taking into account its perceived harshness. *Id.* at 160. As part of its remand order, the Fifth Circuit took the "additional precaution of asking that a judge from another district be appointed to resentence Appellant," explaining that asking another judge in the same circuit may "exacerbate the appearance of impropriety" because it may appear to require one judge to review the rulings of another. *Id.* at n. 18.

 This Court perceives no valid reason to depart from the rationale of *State v. Taylor* and *State v. Nunley.* The rationale is sound. Disqualification and recusal are case-by-case determinations that cannot and should not be resolved with blanket orders, at least not without the agreement of all affected judges. *Nunley,* 923 S.W.2d at 917–18. "Given the definition of a disqualifying bias and prejudice, a particular judge is in the best position to determine if recusal is necessary." *Id.* at 917.

Appellant also points to portions of a criminal trial docket in *State v. Phillip Dopuch,* No. 97 CR–000526 (St. Louis County Cir. Ct., complaint filed Jan. 24, 1997), to support his claim that all St. Louis County circuit judges should be disqualified. In that proceeding the presiding judge requested assignment of a special judge from outside of the circuit to review a claim of tampering with a judicial officer because the judicial officer was a St. Louis judge.

*Dopuch* is not relevant authority. Neither the court of appeals nor this Court was asked to review *State v. Dopuch.* Had the issue been brought on appeal, this Court would not have departed from the rationale expressed in *Nunley* and *Taylor.* The proceedings in *State v. Dopuch,* therefore, are of no assistance to appellant.

Appellant's second issue involves the motion to disqualify Judge O'Brien. Appellant alleged that Judge O'Brien was biased because of his familial and professional relationships. Appellant alleged that: (1) Judge O'Brien was biased because his son was then employed by the St. Louis prosecutor's office and Judge O'Brien might fear that deciding against the prosecutor would jeopardize his son's career; (2) ten years prior to the present case, the prosecutor was employed as an associate in the firm in which Judge O'Brien was once a partner; (3) a daughter of a former law partner of Judge O'Brien had been criticized, while serving as an assistant prosecuting attorney, for using a racial pretext similar to the one at issue in this case; (4) the same daughter had become a municipal judge and no St. Louis County circuit judge should review conduct if another judge previously engaged in that same conduct; and (5) Judge O'Brien postponed depositions of Judges O'Toole and Block regarding their potential knowledge of bias within the St. Louis judiciary because they were his fellow judicial colleagues and he wished to protect them.

Appellant also alleged that Judge O'Brien was biased because of his relationship with Judge Corrigan. Appellant incorporated by reference the allegations of his prior motion to disqualify all St. Louis County judges. These allegations included: (1) other St. Louis County judges

would be called as witnesses to review claims regarding pretextual venireperson strikes by the prosecuting attorney; (2) the Missouri Supreme Court criticized Judge Corrigan when it remanded the Rule 29.15 hearing to another judge, and other judges acquainted with Judge Corrigan might not act impartially because of their support of Judge Corrigan; (3) one part of a claim in the Rule 29.15 proceeding involves the review of Judge Corrigan's potential racial bias and his handling of a *Batson* challenge, which other judges who are acquainted with Judge Corrigan may not fairly address; and (4) St. Louis County judges might decide the case based upon concerns that they would not be retained in office by the voters if they found racially discriminatory conduct on the part of the prosecutor's office. Appellant further alleged that Judge O'Brien's courtroom was located across the hall from Judge Corrigan's courtroom.

Judge O'Brien conducted a hearing on appellant's motions to disqualify. Dean Waldemar of the St. Louis County prosecuting attorney's office explained that Judge O'Brien's son was employed in a separate division of the office, was legally guaranteed rights that protected his job, and that the office had taken steps to insulate Judge O'Brien's son from the present case.

Judge O'Brien stated on the record that if he had any reservations about his ability to decide the case fairly, he would have recused himself from the case "a long time ago." He said that the fact that his son worked in the prosecutor's office did not create an appearance of impropriety. He said that the fact that the prosecutor had been employed as an associate in the same firm in which Judge O'Brien had formerly been a partner did not create an appearance of impropriety. He said that he did not understand how one could believe that

appellant's allegations concerning the municipal judge had anything to do with his being biased.

■ With regard to Judge O'Brien's familial and professional relationships, individually or collectively, the allegations in appellant's motions, if true, do not constitute the types of relationships that would raise doubt or create an appearance of impropriety to a reasonable person. The familial relationship is too attenuated to require disqualification and appellant cites no case in support of such an indirect basis for bias. Judge O'Brien's response with respect to that factor is supported by the commentary to Rule 2, Canon 3(E)(1)(d). Similarly, Judge O'Brien's prior professional relationships are too attenuated to create even the appearance of impropriety. *See State v. Whitlow*, 988 S.W.2d 121, 122–23 (Mo.App.1999). The same is true regarding Judge O'Brien's alleged potential for ruling unfairly merely because other judges are involved. *Taylor*, 929 S.W.2d at 220.

■ With regard to the possible bias based on Judge O'Brien's relationship with Judge Corrigan, at the time Judge O'Brien ruled on appellant's motions to disqualify himself, there were no facts of the type required by *Haynes* presented to Judge O'Brien that would suggest any reason for his recusal. Months later, however, appellant took the deposition of Judge Corrigan. At the deposition, appellant's attorneys inquired of Judge Corrigan about his communications with Judge O'Brien, among other judges, regarding this Court's opinion in *State v. Smulls*.[3] The relevant portions of the deposition are as follows:

> Q. (By Mr. Swift) Okay. Have you had discussions with judges who are present St. Louis County judges regarding the claim of racial bias in this case?

3. A significant amount of time during the deposition was spent on arguments between counsel for appellant and counsel for the state with respect to the relevancy of the questions that appellant was attempting to ask in aid of

identifying bias with respect to all of the judges in the Circuit Court of St. Louis County and, specifically, Judge O'Brien. At least six questions were certified.

A. Sure. Yes.

Q. And you indicated those are present St. Louis County judges?

A. Yes.

Q. Okay. Which judges did you have discussions with?

A. Oh, at what point in time?

Q. From when the original opinion issued until the present.

A. When the original opinion came out, I suppose that with almost every judge probably on this bench who speaks to me, and – but in the last year there's been very little discussion about the issues of it.

Q. Judge, you indicated you had discussions regarding this claim with those judges who had – who are judges who speak to you. Who are those judges that speak to you?

MR. WALDEMER: Well, let me object to the form of the question. I think it's vague that you're saying discussions, and I don't know that we've established what exactly you are asking about discussions. It can be very many things, so I will object to the form of the questions as being vague.

If the witness understands it, he can certainly answer.

THE WITNESS: Yeah, I don't know what you mean by discussion. You mean people I've sat down and talked over lunch about it? Or tell me what you mean – define discussion for me.

Q. (By Mr. Swift) Have you in any way described the nature of the allegations as to racial bias to other judges and asked them to comment on it or – regarding its validity or invalidity?

A. There's been discussion about the validity and invalidity. Have I ever sat down and advised them of charges? I think they all know what the charges are. I've never sat down and said, here, I want to read to you these charges. They've all read the opinions and the charges as far as I – as far as I know.

Q. Okay. And which judges have you had – engaged in those discussions with?

MR. WALDEMER: Again I'm going to object to the use of the term discussions as it relates to anything beyond what he understands as discussions, and I don't know that we've established that. You know, the purpose of my objection is not to change the question.

For somebody just to stop him in the hall and say, hey I saw the opinion, if that's defined as discussion, the answer may be one thing. But if you ask, Did you sit down and talk about the case? – That's where I'm going with it. I'm not objecting to that area, but you keep saying discussion, and I'm not sure that the witness understands it. I know I don't. So I'll object to it as being vague for that purpose.

But if you can answer it, you go ahead and answer it.

THE WITNESS: At some point in time this case has been discussed with me, talked to me, mentioned to me, maybe even – maybe in the elevator, maybe in this room right here, maybe at lunch, maybe in chambers, maybe at a dinner someplace or a judicial conference by almost every judge on this bench.

Q. (By Mr. Swift) When you're saying by everyone on this bench, are you referring to the St. Louis County Circuit Court?

A. Yes, sir. That's what I'm referring to as this bench, yes, sir, at some point in time. And that includes even those people that I would not consider, that – I don't want to say – that I don't see socially or I'm on a – you know, day-to-day contact with. Every judge somewhere along the line has talked to me about it.

Q. Okay. And in talking to you about the claims in this case, the racial bias claim, was Judge O'Brien one of the judges you've in fact had those talks with?

MR. WALDEMER: Well, again let me object now to the term talks, because I don't know that we've ever established what contact, if any. And if you want to ask the question that way, what contact, if any, he's had with Judge O'Brien, I'm not going to object to it, you know?

MR. SWIFT: Okay.

MR. WALDEMER: But I mean——

THE WITNESS: If that's where we're heeded [sic], just ask me and I'll be glad to answer the question.

Q. (By Mr. Swift) What contact with Judge O'Brien have you had regarding this case and the claim in the pleadings regarding racial bias?

A. Since I have been disqualified in this case I've had no conversation with Judge O'Brien about the merits of this case or the complaints in this case whatsoever.

Q. You indicated that you've not had any contact with Judge O'Brien since you were disqualified from this case. How about when the original opinion issued?

A. There was discussion – Judge O'Brien would have been one of the judges that discussed this case along with all the 340 judges in the State of Missouri except for the Supreme Court.

* * * *

Q. And what was the nature of your contact with Judge O'Brien regarding the opinion as it was issued?

A. General discussions at lunch or someplace. Never – never did Judge O'Brien and I sit down somewhere and – one on one as to my recollection and ever discuss the case. It would be in general discussion at lunch or – or someplace like that.

Q. Did Judge O'Brien ever express his views regarding the original opinion to you as to the criticisms directed at yourself?

A. You know, I don't want to speak for Judge O'Brien. I guess you'd maybe have to ask Judge O'Brien that. I'm sure in our discussions there wasn't anybody – I mean everybody that I talked to about the charges that you – that you have raised or have been raised by others I would – based upon their knowledge of the opinion, I would say that they were – they would express views that were not in conformity with what this opinion says.

* * * *

[MR. SWIFT]: In your contacts with Judge O'Brien regarding the original opinion, did he express any views or biases regarding the Missouri Supreme Court's criticisms in the language that he used directly at yourself?

MR. WALDEMER: Let me object to this court having to get hearsay testimony as to what Judge O'Brien might have said. I'll object to the form of the question in that it certainly invites the witness to speculate on what Judge O'Brien's thoughts, thought processes or opinions may be. I'll object on that basis. But if the witness desires to answer and understands the question, he may.

A. I'm – there was so much discussion, so much response to that opinion and the criticism of that opinion, I don't know who said what. And so I'm not going to give specific answers as to which judge may have said what to me, which lawyers may have said what to me. As you may or may not know, there was a groundswell of criticism against the Supreme Court in my opinion for – for the opinion, and I'm not going to speculate on who said what to me. A lot of people said a lot of things to me.

Q. And was one of those people who said things to you? Was it Judge O'Brien?

A. I don't know.

(Corr.Depo.38–46).

■ The taking of Judge Corrigan's deposition occurred well after the hearing

on the motions to disqualify. There is no indication that Judge O'Brien considered the substance of Judge Corrigan's deposition in the context of appellant's related allegations at any time during the proceedings.[4] *Cf. State ex rel. McCulloch v. Drumm*, 984 S.W.2d 555, 557 (Mo.App. 1999). This Court considers, however, the entire record when evaluating facts in support of disqualification. As a general rule, the trial court's judgment regarding recusal will be reviewed for an abuse of discretion. *See State v. Ayers*, 911 S.W.2d 648, 651 (Mo.App.1995). Where the trial court may not have considered certain facts relevant to disqualification, however, an appellate court should determine whether those facts are sufficient to require recusal or, at a minimum, a hearing on the record. *See State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 697–98 (Mo.App.1990).

Judge Corrigan's responses to counsel's questions contain facts "from which prejudgment of an issue in the case" by Judge O'Brien could be questioned and a reasonable person could doubt the impartiality of the court. *See Haynes*, 937 S.W.2d at 204. The relevant portions of the deposition commence with, and focus upon throughout, Smulls' claim of racial bias. Judge Corrigan stated that he had discussions with every judge on the St. Louis County bench, including Judge O'Brien, regarding the claim of racial bias, the "charges" against him, as Judge Corrigan put it. When specifically asked what Judge O'Brien said to Judge Corrigan regarding the criticisms directed at Judge Corrigan himself, Judge Corrigan responded, "You know, I don't want to speak for Judge O'Brien. I guess you'd maybe have to ask

Judge O'Brien about that." Judge Corrigan proceeded then to say that "everybody" that he talked to about the charges of racial bias, based on their knowledge of the opinion of this Court, expressed views that were not in agreement with what the opinion said.

The extent to which Judge O'Brien expressed his views, either about this Court's opinion or the validity or invalidity of Smulls' racial bias claim against Judge Corrigan, is unknown. With regard to the charges of racial bias against Judge Corrigan and what Judge O'Brien may have articulated to Judge Corrigan or others on that subject, Judge Corrigan's statements constitute a factual basis that warrants prudent action for the purpose of eliminating any probability of unfairness. *Id.* at 202. This is not to say that the substance of the relevant portions of Judge Corrigan's deposition is sufficient to overcome the presumption of Judge O'Brien's fairness and impartiality. In the context of questions posited by appellant's counsel regarding the claim of racial bias, however, Judge Corrigan's deposition provides a factual basis for a reasonable person to question the nature and extent of Judge O'Brien's previously expressed opinions on the issue of Judge Corrigan's alleged racial bias. Under such circumstances a hearing on the record before another judge is required, if either party so requests, to resolve the issue of Judge O'Brien's impartiality so that Judge O'Brien may consider and address these fact-based allegations. *See Wesolich*, 794 S.W.2d at 697–99. The judgment must be reversed and the cause remanded.[5]

---

**4.** Judge O'Brien did make a general statement in an order where he ruled on fourteen certified questions from the deposition. He stated that:

> Movant's counsel has had ample opportunity and time to have developed whatever facts which he believes form the basis for disqualification of this Court. This Court has no reservations about its ability to afford the parties a fair and impartial hearing without any preconceived bias and to de-

cide Movant's motion on the evidence presented at the hearing and the applicable law.

**5.** The dissent characterizes Judge O'Brien as stating only that "he disagreed with this Court's original opinion in *Smulls*." Obviously, the majority disagrees, on the basis of the entirety of the relevant portion of the deposition, cited in full, *supra*. It is the absence of explanation in this case with regard to what Judge O'Brien may have articulated

Upon remand, a judge of the circuit who has not been disqualified or has not recused him or herself in the case shall, according to local court rules, assign another judge to conduct a hearing, if requested by a party, and to enter findings regarding Judge O'Brien's ability to act fairly and impartially in this case. If there is a hearing and if it is determined that Judge O'Brien should have recused himself, a new hearing on the merits should be granted. If there is a hearing and the hearing court finds no basis for disqualification of Judge O'Brien, the Rule 29 proceedings may be reassigned to Judge O'Brien for re-entry of his judgment.

▮▮▮▮ In a related assertion, appellant contends that Judge O'Brien should have answered a set of questions directed to him. Appellant's motion to *voir dire* Judge O'Brien stated that the intended inquiry would include, but not be limited to, questions regarding the extent to which there were efforts focused on soliciting or lobbying this Court to modify or remove its criticism of Judge Corrigan from its opinions[6] and Judge O'Brien's participation in such efforts; any discussions Judge O'Brien had with Judge Corrigan, other judicial colleagues, and members of the bar about this Court's opinions as those opinions related to Judge Corrigan; and the nature of Judge O'Brien's professional and personal relationship with Judge Corrigan. Because a hearing on the record is required in which relevant inquiry may be directed to the judge, it is unnecessary to consider the contention. This Court notes, however, that judges are not generally required to respond to *voir dire*. *See State v. Garner*, 799 S.W.2d 950, 954–55 (Mo.App.1990); *cf. State v. Smith*, 944 S.W.2d 901, 924 (Mo. banc 1997). Motions to disqualify generally provide an

adequate procedure by which to challenge the impartiality of a judge. If a party cannot state substantively sufficient facts to warrant disqualification without *voir dire*, the judge should deny the motion. *See Wesolich*, 794 S.W.2d at 698–99.[7]

Because of the disposition of appellant's point relied on, appellant's assertion that the motion court should have allowed the presiding judge of the circuit to hear the motions for disqualification is moot.

The judgment is reversed and the cause remanded.

WHITE, HOLSTEIN, WOLFF and BENTON, JJ., concur.

PRICE, C.J., concurs in result; LIMBAUGH, J., dissents in separate opinion filed.

STEPHEN N. LIMBAUGH, Jr., Judge, dissenting.

I respectfully dissent.

Appellant Smulls, having previously succeeded in overturning the denial of his post-conviction relief claim by convincing this Court that Judge Corrigan, the original trial and post-conviction relief judge, was prejudiced, now wins reversal of a second adverse determination of his post-conviction relief claim by asserting that his new judge, Judge O'Brien, was also prejudiced. Indeed, Smulls' allegations of prejudice are so broad that they encompass not only Judge O'Brien, but all 33 judges who sit on the 21st Judicial Circuit. Although the majority properly held that Smulls was not entitled to a circuit-wide disqualification, the holding appears to be that any judge who told Judge Corrigan, even in passing, that he disagreed with this Court's original decision in *Smulls*—"almost every judge on this bench," as

---

on the subject of the charges of racial bias against Judge Corrigan that must be addressed.

**6.** This Court issued an opinion in *State v. Smulls* then, later, on its own motion, issued a modified opinion.

**7.** When the record reflects facts indicating potentially improper extra-judicial communications, however, the judge should make a statement on the record refuting or explaining the allegations, or the judge should recuse.

Judge Corrigan noted in his deposition – must submit to a hearing before yet another judge to allow the public defender's office to fish for evidence that might eventually lead to a disqualifying bias.

· To compel a hearing on a motion to disqualify, the movant must allege facts, that, if true, would require the judge's disqualification, and those allegations must be "sworn to in an affidavit in support of the motion." *State ex rel. Ferguson v. Corrigan*, 959 S.W.2d 113, 116 (Mo. banc 1997). *See also State ex rel. Wesolich v. Goeke*, 794 S.W.2d 692, 698–99 (Mo.App. 1990). In this case, in the absence of allegations of facts supported by affidavit, the majority cites other authority suggesting that a hearing may be required even without such verified allegations if there is information in the record made known to the judge that, if true, would require disqualification. I have no quarrel with that proposition,[1] but it is perplexing that information from the Corrigan deposition – the majority's only source relied on – somehow necessitates a hearing, much less that it shows disqualifying bias.

Parsing the deposition transcript set out in the majority opinion proves the point. There are two parts that address Judge O'Brien's comments to Judge Corrigan. One part concerns the final opinion in *Smulls*, published at 935 S.W.2d 9, but the other part concerns the original, unpublished opinion that was issued but later withdrawn. The difference between the two opinions is that the majority, in response to the state's motion for rehearing, deleted from the original opinion a good deal of injudicious rhetoric directed at Judge Corrigan.[2]

That part of the deposition transcript addressing the final, published opinion not only fails to support the claim of prejudice, but actually refutes the claim:

Q. (By Mr. Swift) What contact with Judge O'Brien have you had regarding this case and the claim in the pleadings regarding racial bias?

A. Since I have been disqualified in this case [as of the effective date of the final, published opinion] I've had no conversation with Judge O'Brien about the merits of this case or the complaints in this case whatsoever.

* * *

Q. And what was the nature of your contact with Judge O'Brien regarding the opinion as it was issued?

A. General discussions at lunch or someplace. Never – never did Judge O'Brien and I sit down somewhere and – one on one as to my recollection and ever discuss the case. It would be in general discussion at lunch or – or someplace like that.

This testimony must be taken at face value. Despite "[g]eneral discussions at lunch or someplace," Judge Corrigan and Judge O'Brien never discussed the case "one-on-one," and more importantly, they never discussed the "merits" of the case. This is an absolute and uncontroverted denial that any improper comment or communication took place.

On the other hand, the only part of the deposition that possibly involved discussions concerning the merits of the case pertains solely to this Court's original opinion that was withdrawn:

Q. You indicated that you've not had any contact with Judge O'Brien since you were disqualified from this case.

---

1. It appears that Smulls raised the Corrigan deposition testimony as a basis to disqualify Judge O'Brien for the first time on appeal. The failure to call that testimony to Judge O'Brien's attention is arguably a waiver of Smulls' right to use that testimony to disqualify the judge for cause. The state, however, did not argue the waiver issue.

2. The majority deleted, *inter alia*, the following passages: "The trial judge's statements in this case are oafish and insensitive at best and, at their worst, call into question the trial judge's ability to continue to serve as a member of the judiciary ...." and "... the trial judge's mental processes are irrevocably tainted with prejudice...."

How about when the original opinion issued?

A. There was discussion – Judge O'Brien would have been one of the judges that discussed this case along with all the 340 judges in the State of Missouri except for the Supreme Court.

\* \* \*

Q. Did Judge O'Brien ever express his views regarding the original opinion to you as to the criticisms directed at yourself?

A. You know, I don't want to speak for Judge O'Brien. I guess you'd maybe had to ask Judge O'Brien that. I'm sure in our discussions there wasn't anybody – I mean everybody that I talked to about the charges that you – that you have raised or have been raised by others I would – based upon their knowledge of the opinion, I would say that they were – they would express views that were not in conformity with what this opinion says.

\* \* \*

[MR. SWIFT]: In your contacts with Judge O'Brien regarding the

original opinion, did he express any views or biases regarding the Missouri Supreme Court's criticisms in the language that he used directly at yourself?

\* \* \*

A. I'm – there was so much discussion, so much response to that opinion and the criticism of that opinion. I don't know who said what. And so I'm not going to give specific answers as to which judge may have said what to me, which lawyers may have said what to me. As you may or may not know, there was a groundswell of criticism against the Supreme Court in my opinion for – for the opinion, and I'm not going to speculate on who said what to me. A lot of people said a lot of things to me.

Q. And was one of those people who said things to you? Was it Judge O'Brien?

A. I don't know.

All that can be derived from this exchange is that Judge O'Brien, and "all the other 340 judges in the State of Missouri except for the Supreme Court," criticized the original, unpublished opinion, and that Judge O'Brien may or may not have been one of the many judges who communicated that criticism to Judge Corrigan. It is enough concern, perhaps, that the majority requires a hearing even without evidence that Judge O'Brien did, in fact, communicate his disagreement with the *Smulls* opinion to Judge Corrigan, or that Judge O'Brien's mere criticism of the opinion renders him unable or unfit to follow and apply the law as set out by the majority. What is even more troublesome is that the majority requires Judge O'Brien to submit to a hearing to address the possibility that he may have criticized the opinion when the Court, itself, having withdrawn the opinion and deleted the injudicious rhetoric, tacitly acknowledged that the criticism was well taken. Indeed, if Judge O'Brien joined the many other judges in criticizing. the opinion, he was justified in doing so and has been vindicated by the Court's realization that parts of the opinion were inappropriate. Criticism of this sort is no basis to charge Judge O'Brien with suspicion of disqualifying bias.

In contrast, facts that might establish the kind of disqualifying bias that would preclude Judge O'Brien from sitting on the case were neither alleged nor supported by sworn testimony, nor were they apparent from the record. Those are facts that would show Judge O'Brien had an opinion about the merits of the case from an extrajudicial source. *State v. Hunter,* 840 S.W.2d 850, 866 (Mo. banc 1992). In that regard, there is no evidence that Judge O'Brien said words to the effect that he knew Judge Corrigan was not prejudiced against African–Americans, or that he knew Judge Corrigan never acted in a

racially discriminating manner or that he knew anything about the merits of the Rule 29.15 motion outside of the record. Absent evidence of that kind, no hearing is required under *Ferguson.*

It appears that the majority is concerned that Judge O'Brien's criticism may have gone beyond criticism of the parts of the original opinion that were deleted, but there is not one whit of evidence in support. The majority conceded as much, stating "[t]he extent to which Judge O'Brien expressed his views, either about this Court's opinion or the validity of Smulls' racial bias claim against Judge Corrigan, is unknown." In fact, all that can be gleaned from the record is that Judge O'Brien's criticism, if any, was general and unspecified, and that he did not register any criticism after the opinion was modified.

As noted, a hearing is only necessary when the party seeking disqualification alleges facts, that, if true, would require disqualification. *Ferguson,* 959 S.W.2d at 116. If the extent to which Judge O'Brien expressed his views on the matters in question is unknown, then how can it be said that the record shows facts, that, if true, require Judge O'Brien's disqualification? This question can only be resolved by speculating that the majority has fashioned a new rule for the *Smulls* case – a rule that no longer requires a threshold showing of disqualifying bias, but instead subjects judges to a hearing to determine if more evidence exists than is shown in the record.

The effect of the new rule is that Judge O'Brien and similarly situated judges are no longer afforded the presumption "that judges act with honesty and integrity, and will not undertake to preside in [trials] in which they cannot be impartial." *State v. Kinder,* 942 S.W.2d 313, 321 (Mo. banc 1996). That presumption is at the very heart of the old rule, which allows courts to summarily reject motions to disqualify for cause, absent a threshold showing of disqualifying bias. Without the benefit of the presumption, I fear that our courts will be faced with uncontrollable judge-shopping and a multitude of hearings designed more to manipulate the system than to discover actual bias.

For the foregoing reasons, I would reject Smulls' claim that Judge O'Brien should be disqualified, or that a hearing to review the need for disqualification is necessary.